## JAMES ROBINSON V. STATE OF NEBRASKA.

FILED FEBRUARY 17, 1904. No. 13,528.

1. **Murder: PROOF.** Where all of the elements necessary to constitute murder in the first degree are proved, a verdict of guilty will not be set aside because the state did not establish a motive for the commission of the crime.

2. **Instructions.** Instructions examined, and *held* properly given and refused.

3. ————. The repetition of an instruction is not reversible error, unless its effect is to mislead the jury.

4. **District Courts:** JURISDICTION OF CRIMES. Statutes examined, and *held*, that, by law, the territory defined by the legislative act of 1887 as Arthur county is attached to, and is within the jurisdiction of, McPherson county, and that the district court of that county has jurisdiction of crimes committed within such territory.

ERROR to the district court for McPherson county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Beeler & Muldoon* and *A. F. Parsons*, for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown* and *Wilcox & Halligan*, contra.

BARNES, J.

On the 17th day of December, 1902, an information was filed in the district court for McPherson county against James Robinson, charging him with murder in the first degree. It was alleged, in substance, that on the 20th day of June, 1902, he unlawfully and feloniously, and of his deliberate and premeditated malice, in the county of Mc-Pherson, and the state of Nebraska, did shoot and kill one Elmer Thayer. On this charge Robinson was tried, and found guilty of murder in the first degree, the jury fixing the penalty at imprisonment in the penitentiary for life. He thereupon prosecuted error, and will hereafter be called the plaintiff.

His first contention is that the verdict is not sustained by the evidence, because the state failed to prove a motive for the killing. This contention can not be sustained. The law is well settled in this jurisdiction, as well as in others, that, where all of the essential elements of the crime are present, a conviction for murder will stand, even if there be no evidence of motive for its commission. Proof of motive is not necessary to procure a conviction. Maxwell, Criminal Procedure (2d ed.), 208; *Schaller v. State,* 14 Mo. 502; *Crawford v. State,* 12 Ga. 142; *Sumner v. State,* 5 Blackf. (Ind.) 579; *People v. Robinson,* 1 Park. (N. Y.) 649. Proof of motive, however, is always competent evidence against the accused, and absence of apparent motive may always be shown, and is simply a circumstance for the jury to consider. Where the evidence discloses, as in this case, that the accused shot and killed his victim without apparent cause, and thereafter offered no explanation for his act, a verdict of murder in the first degree should be permitted to stand.

Plaintiff's second contention is, that the court erred in giving instruction numbered 1, requested by counsel for the state. The particular part of the instruction complained of is:

"Still it does not require that the premeditation and

deliberation, or the wilful intent and purpose, shall exist for any length of time before the crime is committed."

We have carefully examined the instruction, and find that it is a copy of the one given, and approved by this court, in *Carleton v. State,* 43 Neb. 373, and in *Savary v. State,* 62 Neb. 166, 171. If the words above quoted were to be considered alone, it would seem that the exception thereto was well taken, but, when they are considered in connection with the other parts of the paragraph complained of, it appears that they are not at all misleading. The substance of the instruction is:

That it is not necessary for the state to prove that the premeditation and deliberation, or the wilful intent and purpose to kill, existed for any particular length of time before the homicide; and the language of the instruction is so plain that there can be no doubt about this. That this is a correct statement of the law there can be no doubt. The principle contained therein is also approved in the case of *Clough v. State,* 7 Neb. 320. We therefore hold, that the trial court did not err in giving the instruction complained of.

Plaintiff's third contention is, that the court erred in giving instruction numbered 7, on his own motion, because it was a repetition of the instruction above mentioned. In *Carstens v. McDonald,* 38 Neb. 858, and in *Carleton v. State,* 43 Neb. 373, 414, it was held:

"That a repetition of the same rule will not be ground for a reversal unless its effect was to mislead or confuse the jury."

It is true that, in the case at bar, the court twice stated, in substance, that no particular length of time prior to the act, during which the intention to kill existed and was deliberated upon, need be shown. But, each time, this was stated in connection with a definition of the elements necessary to constitute the crime of murder in the first degree. The necessity of deliberation and premeditation was impressed upon the jury; but it was also stated that it was not necessary to show that such deliberation and premedi-

tation existed any particular length of time before the killing. These instructions did not, in any manner, conflict with each other, and the jury could not have been misled or confused thereby.

The fourth assignment of error relates to the admission of certain evidence; and counsel complain because one of the witnesses was permitted to testify that he heard the defendant say "He had started one graveyard, and could start another." An examination of the record discloses that this testimony was admitted without either objection or exception on the part of the plaintiff, and it further appears that when the court's attention was called to it, by the plaintiff's motion to strike it from the record, the motion was sustained, and the matter withdrawn from the consideration of the jury. It is a familiar and well established rule that, in order to predicate error on the admission of evidence, there must be an objection and exception thereto. But, in any event, the matter, if at all objectionable, was promptly withdrawn from the consideration of the jury, in compliance with the plaintiff's request.

Lastly, plaintiff's counsel insist that, under the information and the proof, the district court for McPherson county was without jurisdiction to try the accused, and pronounce judgment against him. It is claimed that, while the information charges the crime to have been commited in McPherson county, the proof shows that it was committed in the territory defined by the legislature as Arthur county; that, by law, the unorganized territory defined by the legislature as Arthur county is attached to Keith county for election, judicial and revenue purposes, and that therefore the court had no jurisdiction in or over the territory where the crime was committed. This is the most serious question contained in the record, and requires a careful examination of the statutes in order to determine the merits of the contention. Section 146, article 1, chapter 18 of the Compiled Statutes (Annotated Statutes, 4495), provides:

"That all counties which have not been organized in the

13

manner provided by law, or any unorganized territory in the state, shall be attached to the nearest organized county directly east for election, judicial and revenue purposes; *Provided,* That Sioux county shall be attached to Cheyenne county for all the purposes provided for in this section; *Provided further,* That if no county lies directly east of such unorganized territory or county, then such unorganized territory or county shall be attached to the county directly south, or if there be no such county, then to the county directly north, and if there be no county directly north, then to the county directly west of such unorganized territory or county."

Section 147 provides: "The county authorities to which any unorganized county or territory is attached shall exercise control over, and their jurisdiction shall extend to, such unorganized county or territory, the same as if it were a part of their own county." Before the legislative session of 1887, all of the unorganized territory within the boundaries of McPherson and Arthur counties lay directly west of Logan county, which was a duly organized county of this state, and was therefore, by law, attached to that county for election, judicial and revenue purposes. The legislature in that year passed an act which took effect March 31, by which the boundaries of McPherson and Arthur counties were defined. Shortly thereafter McPherson county was duly organized, as provided by law, but Arthur county was not then, nor has it since been, organized; and no such county exists, or is known, as a municipal or political subdivision of this state. That part of the territory defined as Arthur county, while it was situated directly west of the territory called McPherson county, and of Logan county, which was a duly organized county of the state, was also situated directly north of Keith county; and it is contended by plaintiff that the moment the legislature defined the boundaries of Arthur county, by operation of law, it became attached to Keith county for election, judicial and revenue purposes. We do not think this contention is sound. As we have seen,

before the passage of the act of 1887, all of the territory described as Arthur and McPherson counties was attached to Logan county. The act of the legislature defining the boundaries of these two counties did not have the effect of detaching either of them from that county. Until the inhabitants living within the unorganized territory, defined and named by the legislature as a county, take the proper steps necessary to organize it and make it one of the political or municipal subdivisions of the state, it is in no sense a county. It is still unorganized territory in which the inhabitants thereof may thereafter organize a county. Therefore, the territory in question remained attached to Logan county, the nearest organized county directly east of it, for election, judicial and revenue purposes, and when McPherson county was organized, which occurred shortly after the passage of the act, the unorganized territory which had been bounded by the legislature as Arthur county became instantly, as a matter of law, attached to that county for those purposes. So that at no point of time was the territory called Arthur county attached to Keith county. A like question arose in the case of *Ex parte Carr*, 22 Neb. 535. Carr was indicted in Cheyenne county in the year 1877, for the murder of one William Love, and was convicted and sentenced to the penitentiary for life. Some years afterwards a writ of *habeas corpus* was sued out to release Carr from his imprisonment. It was found that the place where the crime was committed was within the boundaries of the unorganized territory of Sioux county, which lay directly north of Cheyenne county. At that time there lay to the east of Sioux county several organized counties of this state, and considerable unorganized territory, some of which had been bounded and named, but not organized as counties. Construing the law above quoted, which, with the exception of the proviso attaching Sioux county to Cheyenne county, was in force at that time, this court said:

"Under chapter 10 of the Revised Statutes of 1866, all unorganized counties were attached to the nearest or-

ganized county directly east, for election, judicial and revenue purposes; therefore, where a murder was alleged to have been committed in the county of Sioux, the party accused of committing the same could not be indicted and tried for the offense in Cheyenne county, it being directly south of Sioux county." The court further said in the opinion: "This is not a case where there had been a change of venue, or the court had directed the finding of an indictment in Cheyenne county, if, indeed, it would have had any authority so to do. The prosecution was instituted in Cheyenne county as a matter of right, and was clearly without authority of law. The court thus being without jurisdiction, its judgment is a nullity and is held for naught."

We think this amply sufficient to dispose of the question raised by the plaintiff. But it further appears from the record that some time in the year 1891, and after the organization of McPherson county, a petition was presented to the commissioners of that county praying for an election to determine whether or not the territory of Arthur county should be attached to and become a part of McPherson county; that it was ordered by the board that the question be submitted to the voters at an election to be held November 3, 1891. It further appears that, after the election, the county commissioners found that a majority of the votes cast were in favor of the annexation of Arthur to McPherson county, and, by resolution, it was declared that the territory called Arthur county from and after January 1, 1892, was annexed to, and should become a part of, McPherson county. It does not appear by whom the petition was signed, but it is fair to presume that, in these proceedings, the county commissioners and the voters were acting under authority and by virtue of the provisions of sections 4 and 9 of article I, chapter 18 of the Compiled Statutes (Annotated Statutes, 4422, 4427), by which such proceedings are authorized. It further appears that since the 1st day of January, 1892, as a matter of fact, all of the territory described within the boundaries of both Arthur

and McPherson counties has been considered and treated as McPherson county. This condition has been recognized and approved by every department of the state, and the officers of McPherson county have been elected from that county and from the territory described and bounded as Arthur county, without discrimination. So we hold that the district court for McPherson county had jurisdiction to try, and pass sentence on, the plaintiff. The district court of McPherson county having jurisdiction over the territory described as Arthur county, it was not a material variance, and therefore not reversible error to allege in the information that the crime was committed in McPherson county.

In the case of *People v. Davis,* 36 N. Y. 77, the fourth count of the indictment charged the offense to have been committed in the county of Yates. The proof showed the crime was committed in the county of Seneca, 20 yards across the boundary line between the two counties. The statute gave either county jurisdiction of the offense, and the court held that the offense charged was local, but there was no misdescription of the place at which it was committed; the sales were at the defendant's storehouse in Romulus, and within 20 yards of the county line. For the purpose of criminal jurisdiction, an offense is committed on the boundary line between two adjacent counties if perpetrated within 500 yards of the boundary line, and there was no error in permitting the jury to render a general verdict. In *Willis v. State,* 10 Tex. App. 493, the court held that an offense committed on the boundary of any two counties, or within 500 yards thereof, may be prosecuted and punished in either, and the indictment may allege the offense to have been committed in the county where it is prosecuted. Proof that the offense was committed within 125 yards of a point located by the evidence within the boundary of the county is sufficient proof of the venue of the offense. It would thus seem that there is ample authority for us to hold that the district court for McPherson county had jurisdiction of the offense, and did

not err in refusing to direct the jury to return a verdict of not guilty for want of jurisdiction.

From an examination of the record, we are satisfied that the defendant had a fair and impartial trial in a court having jurisdiction of the offense; that the evidence is amply sufficient to sustain the verdict of the jury, and the judgment of the district court is therefore

AFFIRMED.