## HARRISON · CLARK V. STATE OF NEBRASKA.*

### FILED JULY 12, 1907.  No. 14,917.

1. **Criminal Law:** ARGUMENT OF COUNSEL. Where the question as to the alleged misconduct of an attorney in his argument to the jury has been submitted to and decided by the trial court on conflicting evidence, such decision will not be disturbed unless it is unsupported by the testimony and is clearly wrong.

2. ————: INTENT: EVIDENCE. In cases where the guilt of the defendant depends upon the intent, purpose or design with which the act was done, or upon his guilty knowledge thereof, the rule is that collateral facts in which he bore a part occurring immediately before and leading up to the transaction complained of may be examined for the purpose of establishing such guilty intent, design, purpose or knowledge, even though such facts show the commission of another crime.

3. ————: INSTRUCTIONS. Error cannot be successfully assigned for the giving of an instruction because it fails to cover all of the questions of law arising in a criminal prosecution, if the instructions, when considered as a whole, fairly and correctly state the law applicable to the facts of the case as disclosed by the evidence.

4. ————: RECORD: REVIEW. Ordinarily, where the bill of exceptions shows upon its face that it is incomplete and does not contain all of the testimony, the supreme court will refuse to consider it; but in a capital case the court will carefully examine the whole record and determine for itself the sufficiency of the evidence contained in the record to sustain the conviction.

ERROR to the district court for Douglas county: ABRAHAM, L. SUTTON, JUDGE. *Affirmed.*

---

* Rehearing denied. See opinion, p. 482, *post.*

*William H. Crow* and *J. B. Strode*, for plaintiff in error.

*W. T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

BARNES, J.

Harrison Clark, Calvin Waln and Clarence Gathright were jointly charged in the district court for Douglas county with the murder of one Edward Flury while attempting to rob him. Clark, who will hereafter be called the defendant, demanded a separate trial, which was granted. He was convicted of murder in the first degree, as charged in the information, and the jury fixed death as his punishment. To reverse the judgment rendered on the verdict he brings the case here by petition in error.

The record discloses that on the evening of March 7, 1906, defendant went to the home of James Ross in South Omaha, and borrowed a 38-caliber Harrington & Richardson revolver. Later that evening, in company with Calvin Waln, he went to the home of the latter in said city, where he found Clarence Gathright, Mrs. Ewing, Mrs. Waln, and a man whose name is not disclosed, and they spent the evening together, talking and drinking beer. Waln, Gathright and the defendant remained in the house until about 10:30 o'clock, when Waln took some hoods or masks made by Mrs. Waln in a V shape, which fitted over the head, exposing the eyes only, and the three men left the house together. From there they went west to a saloon at Thirty-Second and Q streets, then south to Thirty-Second and R streets, and stopped at another saloon. Defendant asked Gathright to put on a mask. All three put them on, and defendant entered the saloon by the front door, the other two by the side door. After leaving this saloon they removed their masks, and went to Thirtieth and U streets, where they stopped at a third saloon. Defendant went to the window, came back, and ordered the other two men to put on their masks. The defendant then entered the front door, and the others the

side door of the saloon.  At one of the saloons the defendant got another revolver, which he gave to Gathright. After leaving the last saloon they took off their masks, and went to the vicinity of the Rock Island depot.  While at that place they saw a motor car, on what is called the "Walnut Hill" line, going south, and defendant said: "There goes a car, we will get that one."  They walked on until they came to a car standing just east of the switch on the Benson and Albright line.   Just at that time Edward Flury, the conductor, got off to throw the switch, and was attacked by Waln and the defendant, with the order: "Hands up!"  Flury replied with a shot.  Waln shot at him.  Defendant then stepped out from a place where he was partially concealed, ran up to the conductor, and a number of shots were exchanged.  Flury received bullet wounds in the wrist and the abdominal cavity from the effects of which he died in about six days.

The assignments of error presented by the defendant's counsel will be discussed in the order of their presentation.

1. His first contention is that the judgment of the district court should be reversed because of the alleged misconduct of the prosecuting attorney in his closing argument to the jury.  The record of the trial fails to disclose the misconduct complained of, and is silent as to any objection to or ruling of the trial court on the remarks alleged to have been made by the prosecuting attorney, which are the basis of this contention.  The question appears to have been raised for the first time on the defendant's motion for a new trial, and was presented by affidavits on the part of the defendant, which were controverted by the affidavits of the prosecuting attorney and his assistants.  The district court found that the remarks attributed to the county attorney had not been made. The trial judge is presumed to have heard all that was said by the attorneys, and has decided this question on his personal knowledge and conflicting evidence in the form of affidavits, and his findings thereon should not be disturbed.  *Cunningham v. State,* 56 Neb. 691.

2. It is contended that the defendant was not properly represented in the trial of this case on account of the ignorance and incompetency of the attorneys appointed by the court to defend him; that his legal rights were not properly safeguarded and protected; and that his attorneys permitted testimony to go to the jury, unobjected to, of distinct and separate robberies which had no connection with the crime for which he was being prosecuted. This contention is not well founded. It appears from the record that the defendant's rights were properly protected; that his attorneys not only safeguarded his rights, but actually preserved and prepared the record which is now before us.

3. The defendant insists that the district court erred in admitting the evidence of Clarence Gathright, H. H. King, Julius Grimm, Scott Holbrook, Joe Trapp and Lee Burket as to the hold-up and robbery of the saloons on Thirty-Second and Q streets, and Thirty-Second and R streets, and Thirtieth and U streets, all in South Omaha, because each of said transactions was a separate and entirely different crime from that charged in the information. The record shows that the transactions which occurred at the saloons above mentioned were carefully excluded from the jury. The state, by the evidence complained of, merely traced the defendant and his associates from the time they left the house of Calvin Waln until they arrived at the place where Flury was murdered. It was shown by this evidence that the three defendants named in the information were at the several saloons above described, but nothing was said by the witnesses as to what was done by them at those places. It was incidentally shown, however, that the defendant got a revolver at one of the saloons, which he delivered to Gathright, and there was a division of money between them. Now if the defendant had purchased a revolver at a hardware store, while on his way to the scene of the crime, there would be no question about the admissibility of evidence to establish that fact; neither would the fact that he procured the revolver by holding

up a saloon-keeper prevent its admissibility, although it incidentally connected him with another crime. Apparently every effort was made by the prosecuting attorney and the court to exclude all evidence of other transactions prejudicial to the rights of the defendant. It would seem, however, that the prosecution would have been justified in going into the transactions at the saloons mentioned; and might have been allowed to show fully what there occurred. Such evidence would have been admissible for the purpose of establishing the intent of the defendant to commit the attempted robbery charged in the information. *Knights v. State,* 58 Neb. 225, 76 Am. St. Rep. 78. "Where the evidence tends to establish any essential ingredient of the crime charged, the fact that it proves or tends to prove another felony not charged in the indictment is not a reason why it should be excluded. It is no objection to evidence of a fact, otherwise competent, that it proves or tends to prove a distinct felony." *People v. Stout,* 4 Park. Cr. Rep. (N. Y.) 114. In Underhill, Criminal Evidence, sec. 89, it is said: "Thus the movements of the accused prior to the incident of the crime are always relevant to show that he was making preparations to commit it. * * * And, generally, when several similar crimes occur near each other, either in time or in locality, as, for example, several burglaries or incendiary fires upon the same night, it is relevant to show that the accused, being present at one of them, was present at the others if the crimes seem to be connected."

Again, it seems clear that the evidence complained of was admissible to disclose the identity of the defendant, and show concert of action by him and his associates in carrying out a prearranged plan of operation to commit a series of robberies. "In all cases where the guilt of the party depends upon the intent, purpose, or design with which the act is done, or upon his guilty knowledge thereof, I understand it to be a general rule, that collateral facts may be examined into, in which he bore a part, for the purpose of establishing such guilty intent, design,

purpose or knowledge," even though such facts show another crime. *Bottomley v. United States,* 1 Story (U. S.), 135. So we are of the opinion that the evidence complained of was both competent and proper, and the court rightfully allowed it to go to the jury.

It is also insisted that the court erred in receiving the testimony of policeman Joseph Blue, who arrested the defendant, and who stated that he found the revolver in defendant's room, and the money which fell to him in the division of the spoils in the coal house, where it had been hidden by the woman he had asked to take care of it for him. It appears that no objection was interposed to this testimony, and it seems to us that it was admissible as tending to connect the defendant with the crime charged against him.

4. The fourth and fifth assignments of error relate to the admission of the evidence of witnesses Briggs and McMillan as to an alleged confession of defendant. It is contended that a part of said confession has no connection whatever with the charge in the information, but related to the robbery of saloons and a division of money, and was therefore incompetent. The record discloses that the proper foundation was laid for the introduction of the evidence of those witnesses. They testified, in substance, as follows: Then, Mr. Clark said that Gathright's statement in regard to the transactions, in regard to the trouble at South Omaha, was not correct. He said that the statement was correct until they got to Thirtieth and R streets or Thirtieth and Q streets, and that from there on the statement was not correct. He stated that they got together, the three of them, and agreed to start out to hold up some saloon, and that they did hold up the saloons; and he said: "I will admit I was the leader, I broke the telephone wires, and stuck up the saloonkeepers, and I will admit I was the leader." He said after they got through with the saloons they went down to the Rock Island track, and there they divided the money, and while they were dividing the money there were two street

cars coming up, and at the time the second car came up they got to talking about going over to hold up the street car. Then they walked south on the railroad track until they got beyond the street car, and then crossed east to the street that the car was on; and he said that, when they came up to the street car, the conductor was not throwing the switch, but was standing close by the switch * * * at the time he was shot; and Clark was asked who shot him, and he said he didn't want to state at this time who did shoot him. But he said he was not throwing the switch; and he said that after the shooting he and one of the men, "I could not say for certain now which one it was," went up the hill together, and the other went in a different direction. It seems to me he went west, and they went northeast; and he said he dropped his hat, and went back and picked up his hat, and went on.

It is not contended that this confession was not made by the defendant, and it is difficult to see how the transactions described, other than the one in question, could have been eliminated from the statement so as to exclude them from the jury without destroying the confession itself. Again, the collateral matters contained in the confession were all admissible in evidence to show the purpose and intent with which the assault was made upon Flury, which resulted in his death. It was all the voluntary statement of the defendant, and was competent evidence tending to establish his guilt. *Pflueger v. State,* 46 Neb. 493.

5. Complaint is made by the sixth assignment of error of a remark made by the court while ruling on the objection of the defendant to a question propounded by the county attorney, and which had already been answered by the witness. The incident complained of occurred during the examination of the witness Julius Grimm. It appears that Grimm was at the saloon at Thirtieth and U streets when it was visited by the defendant and his associates. In the course of his examination he was asked: "Q. What was done there with reference to your gun

that night that you have heretofore identified? A. They took it. Q. Is there anything in particular that calls your attention to this large gun? A. They hit me over the head with it." This answer was. objected to as being immaterial and having no bearing on the case. The court said: "That ought to be sustained. The purpose of this testimony is to corroborate the testimony or the story told by Gathright. But the fact that he saw the gun that night is all that is necessary. The objection is sustained." Not only was the ruling in favor of the defendant, but we fail to see how remarks of the trial judge in any way prejudiced his rights. They clearly limited the application of the testimony to the identification of the revolver, and the defendant has no ground for complaint on that account.

Many other errors are assigned for the admission of evidence, but such assignments are too general to require our attention. For instance: It is said that the court erred in admitting in evidence exhibits 1, 2, 3, 4, 5, 6, 7 and 8. We find that these exhibits are not attached to or made a part of the bill of exceptions, so we are unable to determine that question. It is sufficient in disposing of these general assignments to say that we have carefully examined the record, and are satisfied that it fails to show that any incompetent or improper evidence was received by the trial court.

6. It is further contended that the court erred in giving instruction No. 6, because it fails to state that the jury should find beyond a reasonable doubt that Clark was engaged in attempting to rob conductor Flury, or was present, aiding and abetting the other persons jointly charged with him in said attempted robbery. By paragraph 5 of the instructions the jury were told that, "it is essential, in order to warrant a conviction in this case, that the state prove beyond a reasonable doubt that the defendant, Harrison Clark, on the 8th day of March, 1906, in the county of Douglas, and state of Nebraska, did then and there individually, or in company with others,

forcibly and by violence, or by putting in fear, and with intent to rob, make an assault upon Edward Flury, and that the defendant Clark and his codefendant, Calvin Waln, or Clarence Gathright, while engaged in the common purpose or design of robbing said Flury, did wilfully, purposely and intentionally shoot said Flury, inflicting a mortal wound from which said Flury died within a period of ten days." It will thus be seen that paragraph No. 5 supplied the alleged deficiency of instruction No. 6. All of the instructions in the case should be read together, and, when so read and considered, they present a correct statement of the law applicable to the facts of this case as disclosed by the evidence.

Complaint of a general nature is also made of instructions Nos. 7, 8 and 11. But the foregoing remarks apply with equal force to said instructions.

7. It is also contended that the verdict is not sustained by the evidence. As above stated, the bill of exceptions in this case shows upon its face that it is incomplete, and does not contain all of the evidence. So we would be justified in refusing to consider this assignment at all. But, in view of the fact that this is a capital case, and the jury has fixed death as the punishment for the defendant's crime, we have read the record, and have given it our most careful consideration, and we are of opinion that it contains no reversible error. We are also fully satisfied that the evidence is sufficient to prove the defendant's guilt beyond the peradventure of a doubt.

8. Finally, counsel for the defendant has appealed to us, in case we are constrained to affirm the judgment of the trial court, to reduce the punishment in this case to imprisonment for life. After a careful consideration of the evidence, we are of opinion that it contains nothing which would justify us in modifying the verdict and the judgment of the trial court thereon.

For the foregoing reasons, the judgment of the district court is in all things affirmed; and Friday, August 30,

34

1907, is hereby fixed and appointed as the day for carrying into execution the judgment and sentence of the district court.

JUDGMENT ACCORDINGLY.

The following opinion on motion for rehearing was filed November 9, 1907. *Rehearing denied:*

1. **Criminal Law: INSTRUCTIONS.** In a prosecution for murder in the first degree, if the evidence establishes conclusively that the defendant is either guilty of the crime charged or is entirely innocent, a failure to instruct the jury in regard to inferior degrees of the crime charged in the information is not prejudicial error.

2. ———: **EVIDENCE.** Upon trial of a charge of murder by homicide while engaged in an attempt to rob, it is competent to prove upon the question of intent that the proceeds of several robberies committed by defendant and certain of his companions immediately before the act under investigation were divided, and that the defendant received a share therof.

3. ———: **ARGUMENT OF COUNSEL: ACQUIESCENCE.** It is only in the most flagrant cases of the use of improper language by a prosecuting attorney, even in the prosecution of capital offenses, that defendant's counsel can apparently acquiesce in the language used by remaining silent until the trial is finished, and then cause the trial and verdict to be set aside by complaining of statements to which he seemed at the time to consent.

SEDGWICK, C. J.

1. In the brief upon the motion for rehearing it is urged that the court erred in instruction No. 15 given to the jury. By this instruction the court submitted to the jury three forms of verdict only, one finding the defendant guilty as he stands charged in the information and fixing death as the penalty, and the other finding him also guilty and fixing the penalty at imprisonment for life, and the third finding the defendant not guilty. The information charged the defendant with murder in the first degree, and the contention is that the court should also have submitted to the jury the question of the defendant's guilt of a lower degree of that crime. This is not a new

question in this court. In *Strong v. State*, 63 Neb. 440, it is said: "The court, in charging the jury, is only required to state the law applicable to the facts proved and those which the evidence tends to prove. So, where it is conclusively shown that the defendant either committed the crime charged or is entirely innocent, the failure to instruct with respect to other crimes, or inferior degrees of the crime embraced within the facts alleged in the information, is not error." This language is quoted by this court in *Jahnke v. State*, 68 Neb. 154, and other decisions of this court are there also cited.

2. The second contention in the brief is that the judgment of the district court should be reversed, because upon the trial evidence was allowed, as is claimed, of other crimes committed by the defendant. This matter is quite fully discussed in the opinion, but the brief makes reference to the testimony of officer Hayes, in which he relates the admissions of the defendant Clark. It appears that, while this witness was testifying, counsel for the defendant objected to the witness making statements as to other crimes that may have been committed, and the objection was sustained. It is pointed out in the brief that the witness afterwards stated, referring to the admissions of the defendant: "He said that after he got through with the saloon they went down to the railroad track, and there divided the money." It does not appear that any objection was made to this evidence at the time, and, so far as we can see, the evidence was entirely competent. The defendant and his comrades started out together upon a marauding expedition, in the midst of which this crime was committed. The fact that they divided the proceeds of their undertaking tends to show that they joined in the intent to rob as a means of obtaining the money which they divided. The intent to rob was one of the elements of the offense charged in the information. It was therefore competent to prove that the defendant participated in that intent.

3. In the opinion herein it was said that the trial court

found that the prejudicial remarks attributed to the county attorney in his argument to the jury had not been made, and that the question was determined upon conflicting evidence, as well as upon the personal knowledge of the judge who tried the case, and that therefore the findings thereon ought not to be disturbed. In the brief upon the motion for rehearing it is pointed out that the prosecuting attorney filed his affidavit in resisting the motion for a new trial in the court below, and that in that affidavit it is admitted that in his argument to the jury the prosecuting attorney said, "The jury ought to bring in a verdict which will satisfy the community," and also used this language: "It has been said that there is no such thing as life imprisonment, and it has been said that life imprisonment means not more than ten years in the penitentiary because of pardons that may be granted." It is insisted that the use of such language is prejudicial error. Manifestly the language quoted ought not to have been used by the prosecuting attorney, and if it appears from the record that the rights of the defendant were prejudiced thereby, a reversal of the judgment would be required. A person accused of crime can be convicted only by legitimate evidence establishing his guilt beyond a reasonable doubt. The trial court should not allow the prosecuting attorney to use any other means to secure a conviction. But, when no objection is taken by defendant's counsel at the time, it will be presumed, in support of the ruling of the trial court, that the language complained of would not influence the verdict, unless the language itself is of such a character, or was spoken in such connection and under such circumstances, that it must necessarily have had that effect. A just verdict of the jury ought to satisfy the community that justice has been done, and to say that a verdict should satisfy a community might, if spoken in the proper connection, have had that meaning, and no other. And so of the other language complained of, it might have been so connected with other language used or accompanied with such expla-

nation as to be harmless. It is only in the most flagrant cases of the use of improper language, even in the prosecution of capital offenses, that defendant's counsel can apparently acquiesce in the language used by remaining silent until the trial is finished, and then cause the trial and verdict to be set aside by complaining of statements to which he seemed at the time to consent.

We do not find sufficient reason for a further hearing of the case, and the motion is therefore overruled. The 13th day of December, 1907, is appointed and fixed as the day for carrying into effect the judgment and sentence of the trial court.

REHEARING DENIED.