Brown v. State.

FRED BROWN v. STATE OF NEBRASKA.

FILED JANUARY 15, 1924. No. 23374.

1. Criminal Law: EVIDENCE OF FLIGHT. Evidence of flight of an accused person immediately after the alleged criminal act may be received in a prosecution.

2. ———: ACCUSED AS WITNESS. A person charged with crime shall, at his own request, but not otherwise, be deemed a competent witness. If he become a witness (except perhaps as to cross-examination about extorted confessions) he should be treated as any other witness.

3. ———: ELECTION. Unless there has been abuse of discretion of the district court, a judgment of conviction will not be reversed because the state was not required to elect upon which count of the information the prosecution would proceed.

4. ———: ADDITIONAL INSTRUCTIONS. It is not error to give additional instructions at the request of the jury after they have retired to consider their verdict.

5. Evidence examined, and *held* to support the verdict.

ERROR to the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Jamieson, O'Sullivan & Southard* and *Organ & Delitala,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Mason Wheeler, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., SHEPHERD, District Judge.

LETTON, J.

An information was filed against defendant, containing three counts. The first charged that he feloniously did carry off, decoy, entice away, secrete, and imprison one Jean Jenkins for the purpose of compelling the said Jean Jenkins forcibly and against her will to have and submit to sexual intercourse with him. On this count alone he was convicted and now seeks to reverse the judgment.

It is first assigned that the court erred in allowing the state to make proof of defendant's flight when the flight had been fully admitted in the record. We have repeatedly held that it is entirely competent to permit proof of the flight of an accused person, it being a circumstance tending to show guilt. That the state was allowed, while proving the flight of the defendant, to show circumstances occurring during the flight is also complained of. The circumstances in evidence would lead an ordinary person to believe that defendant was aware that he had been guilty of a heinous crime and was seeking to avoid arrest. Some of this evidence was merely cumulative, and while it would have been better not to have introduced so much evidence of this nature, still we think this did not prejudicially affect the defendant, since the jury were properly instructed as to the reason why evidence of flight is permissible, and that such flight is a circumstance not sufficient of itself to establish guilt, but which the jury may consider in connection with all the other evidence in the case to aid them in determining the question of the guilt or innocence of the accused.

It is next assigned that the court erred in allowing the state to introduce evidence of previous convictions when no foundation was laid for the introduction of any such evi-

dence in manner and form as provided by law. The brief does not call the attention of the court to that portion of the record in which this evidence was introduced and there is no argument or explanation of the assignment. We do not understand what is meant by "when no foundation was laid for the introduction of such evidence." Section 8848, Comp. St. 1922, provides: "A witness may be interrogated as to his previous conviction for a felony. But no other proof of such conviction is competent except the record thereof." This section applies to any witness in a case and is for the purpose of affecting his credibility. By section 10139, Comp. St. 1922, a person charged with crime shall, at his own request, but not otherwise, be deemed a competent witness. If he becomes a witness (except perhaps as to extorted confessions, *Cross v. State*, 142 Tenn. 510, 9 A. L. R. 1354), he should be treated as any other witness. *Heldt v. State*, 20 Neb. 492; *Comstock v. State*, 14 Neb. 205; *Commonwealth v. Tolliver*, 119 Mass. 312; *State v. Werner*, 144 La. 380, 6 A. L. R. 1601, and note on page 1608.

It is complained that the court erred in refusing to compel the state to elect upon which count of the information it would rely. This is a matter under the discretion of the district court. *Stevens v. State*, 84 Neb. 759; *Krause v. State*, 88 Neb. 473. Much of the evidence was applicable to all the counts. There was no abuse of discretion, and since defendant was convicted upon only one count he suffered no prejudice by the refusal of the court to require the election.

After the jury had retired and had been deliberating for a long time, a written request was sent to the court for further instructions. This is assigned as error. It is said that these instructions were repetitions of the instructions already given. In one sense they are repetitions. The instructions first given were somewhat general in their application to the evidence, while those given by the court at the request of the jury cover certain points about which it is evident the jury were uncertain as to the applicable law. It is the duty of the trial court to aid the jury to determine the guilt or innocence of the accused by plain and clear in-

Brown v. State.

structions, and if the jury are in doubt as to the meaning of instructions given, it is entirely proper for them to request, and for the trial court to give, additional explanatory instructions.

That the court refused to discharge the jury after they had been deliberating for nearly 40 hours is complained of. This was also a matter within the discretion of the trial court. The jury were first instructed on October 17. The additional instructions were given on October 18, and the verdict was rendered on October 19. The jury deliberated for some time after the additional instructions were given. There was testimony as to which there was a sharp conflict. For the jury to consider all the evidence (which is contained in a bill of exceptions of over 1200 pages) must necessarily have required a lengthened period of deliberation. This assignment is not well taken.

Misconduct of the attorney representing the state during the trial is said to have occurred. It is not pointed out where any such misconduct is shown by the record, and there is no argument on this point.

It is urged that the verdict is not supported by the evidence. The story of the complaining witness is, that about 6:30 on the evening of May 27, 1922, Jean Jenkins, a young married woman, about 20 years of age, and another young woman, named McManaman, stood at the corner of Twenty-fourth and Cuming streets, in Omaha, waiting for a street car, intending to go to Krug Park. At this time the accused drove up in his automobile and offered to take them to the park. Neither of these women had any previous acquaintance with defendant. They accepted the invitation and entered his car. Mrs. Jenkins and her husband both testified that she had an engagement to meet her husband at the park that evening. She testifies further that defendant drove beyond the park, refused to stop the car, threatened them, and took the women to a small house or shack which stood in a sparsely settled locality several miles to the west; that he drove the car into the shack, which had wide doors, fastened the doors, placed a chain around the neck of each

girl, forced them to go into a hole about four feet deep, six
feet long and four feet wide, which was dug beneath the
floor, and that later he there criminally assaulted each of
them. The next day he permitted them to go into the attic,
threatening to kill them if they made any outcry; that one
of them attracted the attention of a man named Boyd who
was driving nearby, and requested him to call the police.
About this time the accused saw Boyd, and by force com-
pelled him to enter the shack, where he chained him to the
automobile. Boyd escaped and called police officers who
released the girls. Brown fled. His flight was attended by
a number of spectacular exploits before he was finally ar-
rested. It was shown on cross-examination that these two
women were of easy virtue who supported themselves by
prostitution.

The story of the accused is that he had become acquainted
with Jean Jenkins sometime before, and had met her at a
negro dance house in Omaha frequented by both white and
colored people; that he danced with her there; that at his
invitation she had repeatedly gone with him to his place
for sexual intercourse, and that he had paid her for such
trips; that he met her at the corner where she stood, by ap-
pointment; that he did not expect the other girl, but that he
was willing to take them both; that some time after arriv-
ing at the shack the girls went to the attic and found a lot
of what he termed "phoney jewelry;" that they thought it
was genuine and had been stolen by him; that they at-
tempted to extort money from him by threatening to have
him arrested, and that he then put the chains around them,
expecting to release them at a time when he could safely
escape. He denies specifically the story of the girls as to
the sexual intercourse.

Even if Mrs. Jenkins had been at Brown's place before,
and had met him by appointment that night, still, if after
she arrived at the shack he secreted or imprisoned her for
the purpose of compelling her to consent to the act of sex-
ual intercourse, and, in furtherance of such purpose, did or
threatened to do any injury to her person, this would be a

direct violation of section 9560, Comp. St. 1922. The evidence is sufficient, if the jury disbelieved Brown and believed the evidence of Mr. and Mrs. Jenkins and Katherine McManaman, to establish his guilt of the crime charged. His own testimony establishes that he was guilty of the crimes of false imprisonment and of assault. As to his guilt of the graver crime charged there was a conflict of evidence. After long deliberation the jury resolved this conflict against the defendant, and we cannot say that there is not sufficient evidence to support the verdict. The brief filed by plaintiff in error fails to point out the pages of the record upon which the errors assigned appear. Though the brief is defective and in violation of the rules of court, in view of the gravity of the case we have examined the record. The statute is a harsh one and the penalty severe. t was passed immediately after the kidnapping of young Cudahy by Pat Crowe, and it would seem that its drastic provisions have since been effective in the prevention of such crimes, except in this instance. We find no prejudicial error in the record.

AFFIRMED.