## THOMAS PAT O'CONNOR V. STATE OF NEBRASKA.

### FILED JULY 8, 1932. No. 28266.

*Donald Gallagher* and *T. C. Gaughan*, for plaintiff in **error.**

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY and PAINE, JJ., and HORTH, District Judge.

GOSS, C. J.

Defendant was convicted on a charge—under section 28-537, Comp. St. 1929—of entering the building of the Lincoln National Bank & Trust Company, on September 17, 1930, by violence and by putting in fear certain named officers of the bank, with intent to steal. Sentenced to the penitentiary, he brings error proceedings.

The brief of defendant says: "The only question involved in the whole case was this: Did Thomas Pat

O'Connor stand in front of the Lincoln National Bank with a machine gun during the robbery?" O'Connor was a witness for himself. He testified he was never in the state of Nebraska, did not rob the bank in question and was in East St. Louis, Illinois, on September 17, 1930. He testified to certain facts indicating that on September 16 and 17, 1930, he was in his home town dealing with a motor company in the exchange and delivery of his car for a new one. Officers and employees of the motor company and others corroborated him both orally and by documentary evidence as to his presence at East St. Louis on the day the bank was robbed in Lincoln. Several witnesses for the state had positively identified defendant as participating in the robbery of the bank by guarding the outside of the bank with a machine gun while his associates were engaged in looting the bank and depository. On this conflicting evidence the jury believed the witnesses for the state. The question was for the jury to decide. "This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." *Williams v. State,* 115 Neb. 277.

The chief error assigned and relied upon arises out of the cross-examination of defendant. The testimony of defendant was confined to his denial of his presence in Nebraska and of his participation in the robbery; and to details as to his presence in Illinois at the time of the robbery. It is claimed that error was committed in allowing his cross-examination to go beyond the scope of his examination as a witness for himself. The following instances are set up:

(1) Having answered questions showing his acquaintance with Pop Lee, Gus Winkler and others, defendant was shown a group photograph in which the witness appeared with some of them. While being interrogated about Winkler, he was asked if he was not "arrested in

company with him at that time," and answered, "I think I was." His counsel objected to the matter as prejudicial, moved to strike the answer as made before he had a chance to object and asked the court to instruct the jury to disregard it. He was overruled. (2) Having declared he did not know whether Winkler is a licensed airplane pilot and knew nothing whatever about him, the county attorney asked defendant: "Well, you knew him well enough to be arrested with him, didn't you?" The court sustained an objection to this but declined to caution the jury to disregard it. (3) Defendant was asked if he had been convicted of a felony in Louisville, Kentucky. Objection to the question was overruled and he answered in the negative. He was then asked if he was not out on a $20,000 appeal bond to the supreme court. Objection to this was sustained; the court instructed the jury to disregard the question and cautioned counsel not to proceed further with questions of that character. (4) Defendant was shown some record (not described), asked to "glance through there" and to tell whether he was the party referred to. Over objection he answered in the affirmative. (5) Defendant was asked whether he was not arrested on October 22, 1929, in New York City and gave his name as "Thomas Donovan." On objection and request to instruct the jury to disregard the question, the court overruled the objection and received the answer merely, as the court said, "for the purpose of testing the memory" and "is not to be considered as in any wise proving that he had been guilty of anything else." He answered in the affirmative. (6) A similar question, situation and ruling arose with reference to his giving the name of "Thomas J. Gleason" in Peoria, Illinois, on June 7, 1929, and defendant answered he could not remember.

While the trial court gave the purpose of the admission of certain of the above evidence in the cross-examination of O'Connor as testing his "memory," the ultimate purpose of such a cross-examination as we have recited was to enlighten the jury as to the accuracy, memory,

veracity or credibility of the witness. Considerable judicial discretion is committed to the trial court in admitting evidence seeking to bring to light collateral facts bearing on the truth and impartiality of the witness. 28 R. C. L. 607, sec. 197. It is a relaxation of the general rule as to cross-examination ordinarily being confined to the scope of the direct examination and to strictly relevant issues. In this state the legislature has sanctioned it by providing in the Code: "Facts which have heretofore caused the exclusion of testimony, may still be shown for the purpose of lessening its credibility." . Comp. St. 1929, sec. 20-1211. Further, the Code provides: "A witness may be interrogated as to his previous conviction for a felony. But no other proof of such conviction is competent except the record thereof." Comp. St. 1929, sec. 20-1214.

While, in some aspects, the trial court might well have restrained the prosecutor and limited the cross-examination, we do not find there was such an abuse of discretion as to call for a reversal on the points heretofore stated. An analytical perusal of the evidence on these six points, in the light of the entire circumstances, does not indicate that prejudicial error resulted. The statute says that we must, in every stage of an action, disregard any error not affecting the substantial rights of a party. Comp. St. 1929, sec. 20-853.

On cross-examination defendant was asked if, when arrested in East St. Louis on May 5, 1931, he was carrying a .38 revolver. He denied it. By further cross-examination a foundation was laid, and, on rebuttal, Hal Roberts of Dixon, a member of the Illinois state police, testified that he took the loaded gun from inside defendant's belt at the time of his arrest. He was corroborated by Roy Steffens, a Chicago police officer, who was also one of the arresting officers. Roberts identified the shells taken from the gun. His testimony showed that part of the lead had been cut off and the ends creased; and that the identification numbers on the revolver had been

ground off. The argument on behalf of defendant that it was erroneous even to ask defendant about the revolver considered as a collateral matter has already been answered generally. It seems to be settled that, on such a charge as was involved here, evidence that defendant, when arrested, was armed with a revolver, is admissible generally. 54 C. J. 1060. One of the cases there cited is *State v. Barone,* 173 Minn. 232. There it was held that evidence in relation to weapons and shells found at the time of defendant's arrest, nearly eight months after the robbery, was admissible, though remote. The remoteness goes more to its weight than to its admissibility.

Defendant argues that the revolver evidence was purely collateral and that the answers of defendant could not be contradicted on rebuttal. The principle is stated in *Attorney General v. Hitchcock,* 1 Wels. H. & G. Exch. (Eng.) 91: "The test, whether the matter is collateral or not, is this: If the answer of a witness is a matter which you would be allowed on your part to prove in evidence—if it have such connection with the issue that you would be allowed to give it in evidence—then it is a matter on which you may contradict him." See *Boche v. State,* 84 Neb. 845; *Carter v. State,* 36 Neb. 481; *Smith v. State,* 5 Neb. 181. We cannot agree that this issue of fact was collateral. It was germane to the main issue of the defendant's presence and participation in the robbery, particularly in view of his taking the stand to testify. It bore on his character and credibility as a witness. These matters he submitted to the jury when he voluntarily took the stand in his own behalf; the jury had a right to be aided by the evidence in these respects.

During the arguments by the prosecutors, the counsel for defendants interrupted and made objections 27 times to the language used as constituting misconduct. Some objections were sustained. Most of them were overruled. As examples of proper and legal forensic art these closing addresses to the jury would probably not rank with some historic examples that have been preserved for the

edification of the student of the law as it should be practiced in the criminal branch. Only excerpts from addresses on behalf of the state were preserved. Arguments of counsel for defendant do not appear in the record. There are indications that at least some of the instances of misconduct alleged were probably provoked by resourceful counsel for defendant. The learned and experienced trial judge who tried the cause heard all the evidence and arguments. While we do not approve the course of the prosecutors in some of the argument that has been brought to our attention, yet we do not find that prejudicial error has resulted to defendant by reason thereof.

Defendant was sentenced on October 29, 1931. On January 7, 1932, he filed a motion, and affidavits in support thereof, asking that the judgment be vacated and a new trial granted because of newly discovered evidence; requesting that W. E. Barkley be examined orally in support of the motion; alleging that Barkley and others named now know the identity of all the participants in the robbery and now know that this defendant is innocent. Barkley was examined orally on the hearing of the motion. He testified that he was now more perfectly convinced than ever that O'Connor and two others about whom he was asked are guilty. Without entering into a detailed discussion, we do not discover error in the conclusion of the court that he found nothing in the showing to justify the object of the motion and therefore overruled it.

Counsel for defendant express strong conviction that the defendant is innocent and that facts appearing after the trial will demonstrate it. If and when this event occurs, it will be a matter for executive clemency. This court is limited to a review of the record, and, in the circumstances, cannot judicially afford relief because we find no prejudicial error.

AFFIRMED.