STATE OF NEBRASKA, APPELLEE, v. DAVID TOMMY GENE SUGGETT, APPELLANT.

204 N. W. 2d 793

Filed March 2, 1973. No. 38665.

W. A. Stewart, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

This is a prosecution for second degree murder. Following an argument in a bar between Benjamin L. Martinez and the defendant the altercation was resumed in the street. Martinez struck the defendant twice with his open hand and defendant retaliated by stabbing Martinez three times, inflicting fatal wounds. A jury found the defendant guilty of homicide in the second degree and he received an indeterminate sentence of 20 to 30 years. We affirm the judgment of the district court.

Defendant challenges the sufficiency of the evidence to sustain the verdict and judgment. We will not attempt to set out the extensive evidence contained in the record. It was conflicting in several particulars. Suffice it to say that after a careful perusal of the record, we find the State's evidence, if believed by the jury as it evidently was, ample to sustain the conviction. "In determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, it is not the province of the court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence." State v. Rose, 188 Neb. 84, 195 N. W. 2d 215.

In the instructions to the jury, the court gave the standard instructions on self-defense and malice. The

latter instruction stated: "B. 'Malice' is defined as that condition of the mind which is shown by intentionally doing a wrongful act without just cause or excuse. It means any willful or corrupt intention of mind." The jury asked for clarification of the meaning of the term "without just cause or excuse." In response, the following instruction was given: "You have asked me the following question,"

" 'Define "without just cause or excuse" under Instruction No. 8-B'.

"As his principal 'just cause or excuse' for the killing of Benjamine (sic) L. Martinez the defendant contends that he acted in self defense. Self-defense is defined and discussed in Instruction No. 10, to which you are referred.

"In addition thereto, you are instructed that killing in self-defense is grounded upon necessity. The right exists only in extremity where no other practicable means to avoid the threatened harm is apparent to the person resorting to it. If there is no real or apparent necessity for the killing, the defense fails. In order to be entitled to assert self-defense as an excuse or justification for the killing, the defendant must have been in imminent danger of death or great bodily harm at the time of the commission of the act. In order to justify or excuse a killing in self-defense, the defendant must not only have entertained the belief that his life was in danger, or that he was in danger of suffering great bodily harm, but the belief must have been reasonable and in good faith. It is for you, the jury, to determine whether or not the defendant killed Benjamine (sic) L. Martinez in fear of death or of suffering great bodily harm, or, on the other hand, whether or not the killing was motivated by anger, punishment, or vengeance." The instruction although not recommended is not erroneous in context with NJI No. 14.33. See State v. Goodseal, 186 Neb. 359, 183 N. W. 2d 258. It is true that to some extent the instruction was repeti-

tious. This was unavoidable under the circumstances. "It is the duty of the trial court to aid the jury to determine the guilt or innocence of the accused by plain and clear instructions, and if the jury are in doubt as to the meaning of instructions given, it is entirely proper for them to request, and for the trial court to give, additional explanatory instructions." Brown v. State, 111 Neb. 486, 196 N. W. 926.

"The repetition of an instruction is not reversible error, unless its effect is to mislead the jury." Robinson v. State, 71 Neb. 142, 98 N. W. 694. See, also, Brown v. State, *supra*.

The knife used in the encounter was not found and no knife was placed in evidence. There was evidence that a knife had been observed in defendant's hand at the time of and immediately after the encounter. It was also shown that on one other occasion the defendant, during an argument, produced a knife. During argument the State's attorney produced and used a knife to demonstrate what occurred. There was no objection made to this procedure. Under the circumstances here, the use of a knife during a demonstration of what had occurred, although not to be recommended, or approved, could scarcely have prejudiced the jury and was not error. In any event, the failure to object waived the objection now urged. We said in Clark v. State, on motion for rehearing, 79 Neb. 482, 113 N. W 804: "It is only in the most flagrant cases of the use of improper language by a prosecuting attorney, even in the prosecution of capital offenses, that defendant's counsel can apparently acquiesce in the language used by remaining silent until the trial is finished, and then cause the trial and verdict to be set aside by complaining of statements to which he seemed at the time to consent."

On cross-examination the defendant testified that he had never had or used a switchblade knife and never pulled one on anyone. Rebuttal witnesses testified to

one previous occasion on which, during an argument, defendant produced such a knife. Since it was the defendant's contention that he had no knife at the time of the assault but took the knife used from Martinez, this evidence was material and a proper subject for cross-examination. It was held in State ex rel. Jensen v. Turnquist, 101 Neb. 417, 163 N. W. 329, that: "It is error to exclude evidence which has a tendency to impeach a witness on a material fact sworn to by him, the proper foundation having been laid therefor."

In O'Connor v. State, 123 Neb. 471, 243 N. W. 650, this court held: "In the cross-examination of a defendant who voluntarily becomes a witness in his own behalf, considerable judicial discretion is committed to the trial court to go beyond the literal scope of the direct examination in matters testing the accuracy, memory or credibility of the witness." This evidence was also pertinent from the standpoint of testing the credibility of the defendant as a witness. "The reception of evidence collateral to any issue in the case intended to affect the credibility of a witness is usually within the discretion of the trial court, and the ruling concerning it is not reason for reversal of the judgment in the case in the absence of an abuse of discretion." Hampton v. Struve, 160 Neb. 305, 70 N. W. 2d 74.

A question is raised as to the correctness of the sentence imposed in view of recently adopted statutes. Section 83-1,105, R. S. Supp., 1972, requires that when a court imposes an indeterminate sentence, the minimum fixed "shall not be *less* than the *minimum provided by law* nor more than *one-third of the maximum term* * * *." (Emphasis supplied.) In referring to the minimum term, it clearly specifies "the minimum provided by law." It seems clear that this is also the intent with reference to the "maximum term."

How can this be reconciled with section 83-170, R. R. S. 1943, adopted in 1969? This section provides in subsection (4) that "maximum term" means the max-

imum sentence provided by law, *or imposed by a court,* whichever is shorter. In essence, this means the maximum sentence imposed by the court since any sentence in excess of the statutory maximum would be erroneous. Subsection (5) provides that "minimum term" shall mean the minimum sentence provided by law or *the minimum sentence imposed,* whichever is longer. Again we find a similar situation. A sentence shorter than the statute permits is erroneous, but if a sentence longer than the statutory minimum is imposed, it may be the one to be followed.

The two statutes are clearly in conflict *if both are construed as governing courts in the imposition of sentences.* One defines minimum and maximum terms as those fixed by statute, the other as *either the statutory or court-imposed terms.* It is apparent that no court could comply with section 83-170, R. R. S. 1943, in imposing a sentence as whether the court-imposed sentence is longer or shorter than that provided by statute cannot be determined *until after* the sentence is imposed.

It is the rule that: "In determining the legislative intent, all statutes relating to the same subject should be construed and considered together. * * *

"When the intent of the Legislature is clear, it is the duty of the courts to construe it in accordance with such intent. A sensible construction will be placed upon it to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent." Keller v. State, 184 Neb. 853, 172 N. W. 2d 782.

It appears clear that section 83-1,105, R. S. Supp., 1972, is designed to apply to court-imposed sentences. It is likewise clear that section 83-170, R. R. S. 1943, could not, by any stretch of the imagination, be used at the time of sentencing, but it could be, and evidently was designed to be, used as a guideline for the Board of Parole.

One question remains. Is section 83-1,105, R. S. Supp.,

1972, applicable in cases such as second degree homicide where the maximum sentence fixed by law is a life sentence? There is no way to determine the true length of a life sentence. Even taking into account such matters as age, health, and life expectancies, no true measurement can be arrived at. Since the length in years of a life sentence is impossible to determine, so too is it impossible to determine what one-third of such a sentence should be in terms of years. We can only conclude that this section was not legislatively designed to apply in cases of this type.

We find other assignments of error to be without merit.

The judgment of the district court is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein for three reasons: (1) Misconduct of the prosecuting attorney; (2) prejudicial instruction on self-defense; and (3) the erroneous interpretation of section 83-1,105, R. S. Supp., 1972.

I am unable to agree with the majority that the use of a switchblade knife by the prosecuting attorney in giving the jury his idea of what occurred could scarcely have prejudiced the jury and was not error. A switchblade knife is a vicious instrument. Possibly some members of the jury would not appreciate its real character. No knife, and consequently no switchblade knife, had been offered in evidence nor would it have been admissible if it had been. The prosecuting attorney used one in his argument for only one purpose — to inflame the jury. I cannot help but feel that this conduct was much more flagrant than that in some of the cases in which we have reversed for misconduct of the prosecutor.

In its instructions the court gave the usual and a proper instruction on self-defense. In response to a question as to the meaning of "without just cause or excuse," the court gave what is in my judgment a prejudicially er-

roneous instruction. The majority opinion states that the instruction, *although not recommended,* is not erroneous in context with NJI No. 14.33. The difficulty is that the jury is not composed of lawyers and judges who can draw the fine distinction drawn by the majority opinion. They will read the instruction in the light of what it apparently states. I specifically object to the following language: "In order to be entitled to assert self-defense as an excuse or justification for the killing, the defendant *must have been in imminent danger* of death or great bodily harm at the time of the commission of the act." (Italics supplied.) This is an incorrect statement. The defendant *must have believed that he was in imminent danger* of death or great bodily harm. There is a vast distinction in the mind of the ordinary layman between these two statements. The court, in this instruction, reiterated, restated, and overemphasized the instruction on self-defense to such an extent as to raise a question in the minds of the jurors as to whether the defense was actually available. To me this is prejudicial error.

I also question the opinion's interpretation of section 83-1,105, R. S. Supp., 1972. The only place I see a possibility of conflict with section 83-170, R. R. S. 1943, is where the minimum sentence imposed by the court is more than one-third of the maximum. Section 83-1,105, R. S. Supp., 1972, was adopted in 1972. It is the last word of the Legislature on the subject. Note, it starts off, "Except where a term of life is required by law, * * *." This indicates the section is applicable in every instance except where a life sentence is imposed. The word "maximum" must therefore be interpreted as it is defined in section 83-170, R. R. S. 1943. This would mean the maximum provided by law or imposed by the court, whichever is shorter. Consequently, even if the case were not reversed, the minimum would have to be reduced from 20 to 10 years.

McCown, J., joins in this dissent.

CLINTON, J., joins in the portions of the dissent by Spencer, J., dealing with reasons (2) and (3).