STATE OF NEBRASKA, APPELLEE, v. WILLIAM RUSS, APPELLANT.

206 N. W. 2d 561

Filed April 20, 1973. No. 38623.

Welsh & Savin, for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The defendant appeals from a conviction for second degree murder. The assignments of error relate to the sufficiency of the evidence; a motion for a psychiatric examination; a motion for a mistrial; and whether the sentence was excessive.

The record shows that the defendant shot and killed Benny Thomas on September 29, 1971. The killing took place in front of the residence of Cheril Thomas in Omaha, Nebraska.

Cheril Thomas was divorced from Edward Thomas sometime around 1965. She lived with the defendant

from 1965 to 1968 and from December 1969 to July 1971. The defendant is the father of her child, Tracey Thomas, born January 29, 1966.

Cheril Thomas became acquainted with Benny Thomas in March 1971, when he was one of her students at O.I.C. She had been on one date with him and he had visited her home twice. He was a student at the University of Omaha and had delivered a textbook to Cheril just before he was killed.

The record contains evidence that on a number of occasions the defendant threatened others with violence and had engaged in violent conduct. On April 3, 1969, the defendant threatened to kill Cheril if she left her house. Later when she left with a male friend, the defendant stabbed both Cheril and her friend. In July 1971, the defendant threatened to kill Cheril. In September 1971, the defendant told Benny Thomas that Thomas had better keep Cheril out of his car or else something would happen to Thomas. On several occasions the defendant warned Cheril to avoid other men or they could be hurt. On the day of the murder the defendant had threatened to kill Cheril.

On September 29, 1971, after Cheril returned from work, she went to a nursery near her home to pick up Tracey. The defendant came into the nursery, talked with Cheril, and then left. The proprietor of the nursery sent two of her employees to walk home with Cheril and Tracey. When they were about halfway to Cheril's house, the defendant stopped Cheril and tried to talk to her but Cheril refused to talk to the defendant.

When Cheril had reached her house, Benny Thomas drove up and stopped in front of the house. Cheril walked over to the car to talk to Thomas and received a textbook he was loaning to her. The defendant then drove up behind the automobile Thomas was driving, got out of his car, and ran over and shot Thomas in the head as he was starting to drive away. The defendant then turned and shot Cheril. The employees

from the nursery who had walked home with Cheril were eyewitnesses to the murder.

The defendant testified that he shot Thomas in self-defense. The jury did not accept this testimony and was not required to believe it.

The defendant complains that the evidence did not show malice, an essential element of second degree murder. § 28-402, R. R. S. 1943. Malice in a legal sense denotes that condition of mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. State v. Schumacher, 189 Neb. 138, 201 N. W. 2d 249. The evidence was clearly sufficient to sustain a verdict of second degree murder.

Five days before the trial commenced, the defendant filed a motion for an order requiring the defendant to be examined by a psychiatrist. There was no showing filed in support of the motion and there was no formal hearing or ruling on the motion before the trial commenced.

On the second day of the trial the court inquired of the defendant as to whether he was willing to be examined. The defendent stated he had previously refused to be examined; and he was now willing to submit to an examination if his counsel felt it was necessary but that he did not feel it was necessary and had told his counsel that day that they would proceed with the trial without an examination.

There is nothing in the record to indicate the court should have required that the defendant be examined. Under these circumstances there was no error of which the defendant could complain.

After the jury had returned a verdict but before the jury had been polled, the defendant advised the court that he recognized one of the jurors to be a person he had known 24 or 25 years before. When the jury was polled, the court asked the juror in question if she knew the defendant and she replied in the negative. The defendant later moved for a mistrial which was denied.

There was no basis for any claim of error in this ruling.

The defendant was sentenced to imprisonment for a period of 24 to 29 years. He contends the sentence is excessive and in violation of section 83-1,105, R. S. Supp., 1972.

The maximum sentence for second degree murder is life imprisonment. § 28-402, R. R. S. 1943. Section 83-1,105, R. S. Supp., 1972, is not applicable to such an offense. State v. Suggett, 189 Neb. 714, 204 N. W. 2d 793.

The record does not indicate that the sentence imposed was excessive. The defendant had made threats of violence on numerous occasions and had carried out his threats several times. The sentence was well within the discretion of the District Court.

The judgment is affirmed.

AFFIRMED.