Richard L. TRIPLETT et al., Plaintiffs,

v.

Norbert T. TIEMANN, Governor, et al.,
Defendants.

Civ. No. 03085.

United States District Court
D. Nebraska.

July 22, 1969.

See also D.C., 302 F.Supp. 1244.

Rice & Adams, Bellevue, Neb., for
Richard L. Triplett and The School Dis-
trict of Bellevue.

Atkinson & Kelley, Papillion, Neb., for plaintiffs in intervention Paul D. Bassler and The School District of Papillion.

Leo Eisenstatt and J. Patrick Green, of Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison, Omaha, Neb., for plaintiffs in intervention Owen A. Knutzen and The School District of Omaha.

Deborah Shepherd and John K. Londay, Clarence A. H. Meyer, Atty. Gen. of State of Neb., by Harold Mosher, Asst. Atty. Gen., Lincoln, Neb., for Norbert T. Tiemann, Governor of State of Nebraska, et al., defendants and for defendants brought in as additional parties defendant.

## MEMORANDUM AND ORDER

Before JOHNSEN, Senior Circuit Judge, ROBINSON, Chief District Judge, and VAN PELT, District Judge.

PER CURIAM.

### I.

The Congress has enacted various statutes in federal aid to education, among which is the Educational Agencies Financial Aid Act (Public Law 874, 81st Cong.), 64 Stat. 1100, 20 U.S.C. §§ 236–244. The object of that Act was, as its initial section declared, to provide some federal assistance to those local educational agencies upon which the United States had placed a financial burden by reason of federal activities being carried on in the areas thereof.

The Act made specification of the kinds of situations in which this special assistance was intended to be provided, the principal ones of these being (1) where the local sources of revenue to such an agency had been diminished as a result of the acquisition of real property by the United States (Sec. 2 of the Act, 20 U.S.C. § 237); (2) where the local agency was providing education for children residing on federal property in the area (Sec. 3(a) of the Act, 20 U.S.C. § 238(a)); and (3) where the local agency

also provided education for children whose parents were employed on such property (Sec. 3(b) of the Act, 20 U.S.C. § 238(b)).

Only the second and third of these situations are here involved. Forty-six local school districts in Nebraska are shown to have been receiving payments from the United States on one or both of these bases. For the Fiscal Year 1967–68 it is indicated that such payments totaled $3,221,297.04, ranging from $1,394.00 to $1,536,194.54 in amounts.

In 1967 the Legislature of Nebraska enacted a statute which for the first time made provision for aid by the State to its public schools. State Foundation and Equalization Act, Laws of 1967, Ch. 514; Neb.R.S.Supp.1967, §§ 79–1330 to 79–1344. The statute, however, required that, in the payment of the general aid thus provided for, such school districts as had received federal funds under "subsections 3(a) and 3(b) of Public Law 874, 81st Congress, as amended" [situations 2 and 3, supra] were to account for these payments in a reduction of the amount of the State aid to which they would otherwise be entitled.[1] Neb. R.S.Supp.1967, § 79–1338.

Indeed, not only did the statute require deduction of the federal funds so received, but it also sought to insure that the State would have the benefit of all the funds under subsections 3(a) and 3(b) of Public Law 874, which would be available to a district upon application. This was done by providing that subtraction similarly should be made against a district of the amount of such federal payments which it was eligible to receive, if it failed to make application for them. *Id.*

The object of these conditions of the statute plainly was to make the federal payments available in the second and third situations under Public Law 874 serve, not as special assistance to a local educational agency for federal impact,

---

1. The statute also required deduction to be made of any federal payments received by a school district under the Johnson-

O'Malley Act, 25 U.S.C. § 452, as amended (education of Indians), but that provision is not here involved.

but as an economic element in the State's general support scheme. The federal payments were used as a means of effecting savings in the appropriations which would otherwise be necessary to carry out the State's general support commitment. A school district which had been the subject of federal impact in the respects here involved and was entitled to receive congressional payments on account thereof was not permitted to have these funds operate to provide it with any benefit over the school districts upon which no such impact had been occasioned. The result of this absorption of impact assistance against a school district was to deprive the payments under Public Law 874 of their intended significance as local benefits.

The present action is one brought by the School District of Bellevue and a taxpayer thereof, with joinder as plaintiffs in intervention thereto by the School District of Papillion and a taxpayer thereof, and by the School District of Omaha and a taxpayer thereof, (herein all called plaintiffs), against the members of the State Board of Education and other officers of the State, seeking to have declared unconstitutional the provision in the Nebraska School Foundation and Equalization Act, § 79–1338 of Neb.R.S. Supp.1967, which sought to make use of the amounts received by the plaintiff school districts in federal-aid funds under "subsections 3(a) and 3(b) of Public Law 874, 81st Congress, as amended"; in credit or deduction from the general state support to which they would otherwise be entitled; and to have the defendants enjoined from making such use of these federal payments against them.

The claims of constitutional violation alleged are of the Supremacy Clause, Art. VI, Cl. 2, of the Constitution, for interference by the Nebraska statute with congressional purpose, and of the Equal Protection Clause of the Fourteenth Amendment, for improper discrimination as to general state support because of federal-impact assistance.

A three-judge court was designated under 28 U.S.C. §§ 2281 and 2284,

to hear and determine the case. Such a court would not be entitled to make grant of the injunction sought unless a substantial constitutional question could be said to be involved in addition to the Supremacy Clause claim asserted. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194.

Since it was not determinable from the face of the complaint whether the Equal Protection Clause claim could involve a substantial constitutional question on the elements of the situation, the members of the Court agreed that the hearing held should be one in which the judges would sit both in a three-judge court capacity and in a single-judge court capacity. Cf. Carlsbad Union School District v. Rafferty, 300 F.Supp. 434 (S.D.Cal.1969). See also Jackson v. Choate, 404 F.2d 910 (5 Cir. 1968).

The parties assented to this form of hearing. Thus if it turned out that the Equal Protection Clause claim involved a wholly insubstantial question so that there would be no basis for the three-judge court to deal with the Supremacy Clause claim adjunctively, the case would be relegated to the Chief Judge of the District Court, upon whose docket it initially appeared, for disposition by him in his single-judge court capacity.

### A.

### MOTIONS AT THE HEARING

A number of motions were presented at the hearing and were dealt with by the court as follows:

1. A motion by the plaintiffs for an order under Rule 23, Fed.R.Civ.P., 28 U.S.C.A., permitting the suit to be maintained as a class action for representational purposes as to the other 43 school districts in the State which had received federal funds under subsections 3(a) and 3(b) of Public Law 874 and thus were in a similar situation as the plaintiffs, was orally granted.

2. An application by the plaintiffs for leave to add Deborah Shepherd and John K. Londay as party defendants to the action, because of their having be-

come, since the suit was instituted, members of the State Board of Education by virtue of a statutory increase in the number of members thereof, was orally granted. Summons has been duly issued and served upon the added defendants and they have since filed answers similar to those of the other defendants and written consents that submission may be taken against them upon the hearing previously held and the record thereof.

3. Upon motion of the defendants and with the assent of the plaintiffs, dismissal was orally granted of the Governor of the State, the Director of Administrative Services, and Auditor of Public Accounts, and the Commissioner of Education, as party defendants to the action. This leaves as defendants only the members of the State Board of Education and the State Treasurer, who constitute under the Nebraska statutes the only officers vested with the power of control and disbursement of the funds involved.

4. A motion by the defendants for dismissal of the action upon the grounds that the case could be determined more speedily in the State courts, and that in any event the complaint failed to state a claim upon which the federal courts could grant relief, was submitted without argument or showing of any possible basis therefor, but was permitted by the Court to be taken under advisement. The motion is hereby overruled and denied as being on its face devoid of any merit or warrant.

5. The rest of the hearing was devoted to proceedings on the motion of all the plaintiffs for summary judgment. Insofar as such motion is predicated on the Equal Protection Clause claim it will be denied, as discussed in the subsection of this Memorandum immediately following, and directed in the Order subjoined hereto. Insofar as such motion is predicated on the Supremacy Clause, it, together with the case, will be relegated to Chief Judge Robinson for disposition by him in his single-judge court capacity, as discussed in the subsection of this Memorandum thereafter following, and directed in the Order subjoined hereto.

B.

## EQUAL PROTECTION CLAUSE CLAIM

■ The plaintiff school districts are legally not subject to injury under the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment has no application to the acts of a State against its own political subdivisions. City of Trenton v. New Jersey, 262 U.S. 182–188, 43 S.Ct. 534, 67 L.Ed. 937 (1923); City of Newark v. New Jersey, 262 U.S. 192, 196, 43 S.Ct. 539, 67 L.Ed. 943 (1923); Williams v. Mayor & City Council of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933). See also Annotation, 116 A.L.R. 1037.

As to the plaintiff taxpayers, however, it is legally possible for an Equal Protection Clause injury to be committed against them. But, though such an injury can be occasioned to them, it is not one as to which they can maintain an action, unless permission or standing to sue has either statutorily or judicially been accorded to a taxpayer status in respect to a general revenue wrong. In some degree, all States now, with two exceptions (Kansas and New York), appear to allow taxpayers' suits. See concurring opinion of Justice Douglas in Flast v. Cohen, 392 U.S. 83, 108, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); also Wright on Federal Courts, § 13 at p. 37.

■ But apart from this state recognition, a local taxpayer has long been accorded standing to maintain an action in the federal courts against officials of a state political subdivision who "assume, in excess of their power, to create burdens upon property holders". Crampton v. Zabriskie, 101 U.S. 601, 609, 25 L.Ed. 1070 (1879); with reapproving expression in Frothingham v. Mellon, 262 U.S. 447, 486, 43 S.Ct. 597, 67 L.Ed. 1078 (1925). The standing thus accorded to a local taxpayer in the federal courts is not, however, one of status in him to act as a private attorney general. He cannot bring suit wholly abstractly but must be able to demonstrate some wrong and in-

jury to himself personally. Even in the recent opening-up of standing in a federal taxpayer to sue made by Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942 (1968) [whatever may be the scope thereof to which it may lead], it is to be noted that the Court adhered and gave emphasis to the condition that a suing taxpayer must have a "personal stake in the outcome of the controversy"; and that his right to sue can only rest upon the basis that "his tax money is being extracted and spent" for something that he ought not to have to pay. 392 U.S. at 101 and 106, 88 S.Ct. at 1955.

The situation here involved has admittedly occasioned no additional extraction of tax money from the plaintiff taxpayers up to the present time, nor is it shown that it is possible for it to be the basis of any such extraction in the future. The question of deducting the federal payments is one which can have reality and existence only as to the present fiscal year. The provision of the Nebraska statute for such deduction has since the institution of this suit been repealed by the Legislature and it thus is without any basis for future application or operation.[2] There is, as has been noted, no claim that the amount of taxes imposed upon the plaintiff taxpayers for the present year has had any relation to the question of deduction of federal payments. It is conceded that there is no way that any further taxes could be imposed by the school districts in relation to their situation for the present fiscal year, even if federal payments were to be deducted from state-aid funds.

▮▮ Treating the allegations of the complaint here as being broad enough to require the question of standing to sue to be examined beyond the face of the pleading, we are obliged to hold, on the undisputed facts appearing at the hearing, that the plaintiff taxpayers are utterly without any basis on which to make assertion of an Equal Protection Clause claim in the situation. As stated, so far as any deduction is concerned that might be made in state-aid distribution for the present year, it is clear that this possible aspect has not subjected them to any increase of their regular taxes. They cannot therefore as to these taxes claim any difference or discrimination in position from that of the taxpayers of other school districts in the State. And with repeal made of the deduction provision, the statute cannot be used to occasion any such future tax increase to them. Since the Equal Protection Clause Claim thus is without any possible arguable basis, it does not in the situation present a substantial constitutional question. A question cannot be substantial if it does not call upon the court to engage in a consideration and determination as to its merits regardless, of course, of what the result of such a consideration and determination might be.

### C.

### SUPREMACY CLAUSE CLAIM

With no possible substantial question being involved in the case except the Supremacy Clause claim, the three-judge court is, as has been indicated, without basis for assuming to deal with and make disposition of that claim adjunctively. The case is accordingly being relegated to Chief Judge Robinson for disposition by him of the Supremacy Clause claim as a single-judge district court. For whatever indicative significance there can be to the parties, and whatever practical purpose it is possible thereby to serve otherwise, the three-judge court engages in the declaration that if it were entitled to proceed with the Supremacy Clause claim, its conclusion, result and disposi-

---

2. The repeal made of the statutory provision for deduction could perhaps, in view of the emergency clause attached thereto, raise a question as to the mootness of the whole controversy on its possible release of the Board from any restriction as to the disposition of funds which it might thereafter make. The Board, however, feels that the restriction, notwithstanding its unqualified repeal, remains applicable to the funds in its hands for the present fiscal year. We shall therefore not concern ourselves with the question of possible mootness.

tion would be the same as set forth in Memorandum and Judgment of Chief Judge Robinson, which is being filed concurrently herewith. Thus, if on any appeal which might be taken in the case, it should be held that the three-judge court was entitled to deal with the Supremacy Clause claim, this declaration shall have the effect of and constitute an adoption by the three-judge court of the Memorandum and Judgment filed by the single-judge district court. Such Memorandum and Judgment will in that event, upon receipt of a mandate, be refiled and re-entered by the Clerk as the action of the three-judge court, without further direction.

## II.

### ORDER

On the basis of the foregoing Memorandum, it is ordered as follows:

1. The suit is permitted to be maintained as a class action as to the 43 other school districts in Nebraska which have received federal aid funds under subsections 3(a) and 3(b) of Public Law 874, 81st Congress.

2. Deborah Shepherd and John K. Londay shall constitute added party defendants to the action in their capacity of members of the State Board of Education, and submission of the case is taken against them upon the hearing previously held and the record thereof.

3. Dismissal is made of the Governor of the State, the Director of Administrative Services, the Auditor of Public Accounts, and the Commissioner of Education as party defendants to the action.

4. The motion of the defendants for dismissal of the action is denied.

5. The Equal Protection Clause claim of the plaintiffs is dismissed as involving no substantial constitutional question either as to the plaintiff school districts or as to the plaintiff taxpayers.

6. The case is relegated to Chief Judge Robinson for disposition of the Supremacy Clause claim by him as a single-judge district court.