STATE OF NEBRASKA, APPELLEE, v. JUDITH WAYNE GOODSEAL, APPELLANT.

183 N. W. 2d 258

Filed January 29, 1971. No. 37605.

360

Paul E. Watts and Michael N. Schirber, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The defendant, Judith Wayne Goodseal, was charged

in the district court for Douglas County with murder in the second degree for the killing of Dick Edgar Williams on July 8, 1969. The jury returned a verdict of guilty and the trial court imposed a sentence of 10 to 15 years imprisonment at hard labor in the Nebraska Reformatory for Women. The defendant has appealed.

On July 8, 1969, the body of Williams was found on the street edge of the sidewalk in front of a vacant building at 5208 South 28th Street in Omaha. It was later determined that he had been shot five or six times with .32 caliber bullets. That Williams was the victim of a homicide seemed apparent. The defendant admitted shooting the deceased and asserted that it was done in self-defense.

The deceased and Lee Dunbar were employed at a service station in Omaha. After closing the station in the evening of July 7, 1969, deceased suggested that they go out on the town. They went to several bars, purchased and drank some beer, and finally drove to the Eldorado Club at about 1 a.m. Deceased had previously inquired of a taxi driver as to where they might find some women. They parked Dunbar's car near the Eldorado Club where deceased accosted the defendant who was driving a car leased to Larry W. Pullian and after some negotiation offered $20 for her intimate association. Deceased purported to give defendant two $10 bills which she soon discovered to be two $1 bills and returned them to him. She told him to get out of the car and, according to her testimony, he proceeded to force his desires upon her.

The defendant was 24 years of age, was married, and separated from her husband. She had her two small children in her custody. She had been living with Larry W. Pullian, a single man, for about a year. She admitted that she had engaged in prostitution and admitted further that she had negotiated with deceased for such an act with him. Pullian testified that he had a .32 caliber pistol that he had taken as security for a loan. He stated

that he had placed the pistol on the floor of his car under the driver's seat, but had no knowledge as to whether or not it was loaded. Defendant testified that she did not know there was a gun in the car until immediately before the shooting.

Dunbar testified that after deceased entered defendant's car, defendant and deceased drove around the block and Dunbar followed in his car. Defendant parked her car and Dunbar parked his car about 5 to 10 feet behind it. After some delay he approached the car driven by defendant and made some inquires during the course of which deceased asked him if he had his gun. On signal from the deceased, he answered in the affirmative although he had no gun. Some time later, Dunbar heard five or six pops somewhat similar to exploding firecrackers. He saw defendant drive away and attempted to follow. He saw a man in the back seat but was unable to follow the car. He made an anonymous call to the police and informed them that there had been a shooting in the area. He gave the police the color and license number of the car. The call was verified and answered by the police, but evidence of a shooting was not discovered until the body was later found on the sidewalk in front of 5208 South 28th Street.

Defendant testified that deceased said he did not have $20. She said he tried to force her to remove her clothing which she resisted. She did not testify to making an outcry or to any attempt to open the car door or to leave the car. He finally spun her around with her legs toward him and was threatening to strike her which he did not do. He partially removed his own clothing. She said that she was afraid of deceased and fearful because she knew the man following them had a gun. As he turned her around in the seat, she said her left hand dropped down and came in contact with a gun. She got the gun in her left hand, pointed it at deceased, and squeezed it until all the bullets in the automatic pistol were fired. Deceased slumped back against the door of

the car. She drove the car back in front of the Eldorado Club, honking the horn to attract the attention of Pullian. As she came in front of the Eldorado Club, Pullian came out and, seeing the deceased in the car and the blood on defendant, signaled her to pull over to the curb. She went on, turned the corner, and stopped. He followed and when he reached the car he opened the front door on the right-hand side and the body fell out on the edge of the sidewalk where it was later found by the police. He then got in the back seat because, as he testified, the front seat was covered with blood.

Defendant and Pullian drove away and went home without reporting the incident to anyone. On arrival at their home, Pullian put the gun away and produced it in court at the trial. He washed the floor mats and upholstering to remove the blood stains. The floor mats and upholstering were still damp and the odor of vinegar was noticeable when the car was searched that afternoon by the police.

We point out that defendant admits shooting the deceased with a .32 caliber automatic pistol which she found under the seat of the car. She claims that she squeezed the trigger of the gun until all its shells were fired into the body of the deceased. She contends that she did the shooting while in fear of the deceased and Dunbar who admittedly had followed the Pullian car and had told the deceased in defendant's presence that he had a gun. The evidence is clear that defendant and Pullian had left the body of deceased on the sidewalk in front of a vacant building at 5208 South 28th Street. They left the scene immediately and did not report the killing of the deceased to anyone. On arriving home, the gun was put away and the floor mats and upholstering washed to remove the blood stains and thereby remove evidence of the killing. There is evidence that would sustain a finding of self-defense. On the other hand, there is evidence that defendant attempted to conceal her participation in the killing, an indication of guilt. It was for

the jury to determine under all the facts and circumstances whether or not defendant purposely and maliciously killed Williams without deliberation and premeditation or whether or not she killed him in self-defense as that defense is defined by the law of this state. The jury resolved these issues against the defendant and thereby found beyond a reasonable doubt that defendant did not kill Williams in self-defense and found also that the evidence shows beyond a reasonable doubt the defendant did kill Williams purposely and maliciously but without deliberation and premeditation.

The defendant contends the rule as to the weight to be given to circumstantial evidence supports the assignment of error that the evidence was insufficient to sustain the conviction. The jury was properly instructed on the circumstantial evidence rule by instruction No. 15 and its giving is not assigned as error. The jury considered the circumstantial evidence in the light of this instruction and concluded that the facts and circumstances tend to connect the accused with the crime charged and were of such a conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt. After a verdict of guilty in part on circumstantial evidence and on appeal therefrom for insufficiency of the evidence, the verdict may not be set aside as a matter of law for insufficiency of the evidence if the evidence sustains some rational theory of guilt. State v. Reeder, 183 Neb. 425, 160 N. W. 2d 753; State v. Williams, 183 Neb. 257, 159 N. W. 2d 549; State v. Ohler, 178 Neb. 596, 134 N. W. 2d 265. The evidence is sufficient to sustain the finding of the jury.

Defendant assigns as error the trial court's refusal to give her requested instruction applicable to the law of self-defense. The requested instruction is: "Defendant contends that she acted in self-defense. Self-defense is defined as the use of such force by any means necessary to repel an attack as at the time appeared to defendant to be necessary, although she may have been

mistaken as to the extent of the actual danger, if a reasonable person would also have been so mistaken. The defendant was justified in acting upon the facts as they appeared to him and is not to be judged by the facts as they actually were.

"When a person is threatened or attacked in such a manner that it causes him to believe he is in danger of receiving bodily injury, he may use self-defense to defend himself.

"It is necessary for conviction that the state prove beyond a reasonable doubt that the defendant was not acting in self-defense, and there is no burden on the defendant to prove that she was acting in self-defense."

The foregoing requested instruction was given verbatim by the trial court as instruction No. 9, except that the court inserted a paragraph between the second and third paragraphs of the tendered instruction. The inserted paragraph stated: "However, when the person threatened or attacked uses more force than permitted by the above definition of self-defense, she is guilty of unlawful conduct and is criminally responsible therefor." It is the contention of the defendant that it was error for the trial court to give an instruction which requires the jury to weigh the type and degree of force and means used.

The defendant relies upon the defense of self-defense as defined by section 29-114, R. S. Supp., 1969, referred to herein as the Nebraska Self-Defense Act. The requested instruction tendered by the defendant is based upon the Nebraska Self-Defense Act which became effective on June 5, 1969. The State relies solely upon an interpretation of the act. It is readily apparent that the constitutionality of the act is not raised by either the State or the defendant.

The pertinent part of the act provides: "No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting, by any means necessary, himself, his family, or his real or personal property, or

when coming to the aid of another who is in imminent danger of or the victim of aggravated assault, armed robbery, holdup, rape, murder, or any other heinous crime." § 29-114, R. S. Supp., 1969. The State argues that the language of the statute preserves the concept of the use of reasonable force only in defending one's person or property. On the other hand, the defendant argues that the act provides that a person may use unlimited force in repelling an aggressor and that the common law rule that one may use only reasonable force has been abrogated by the act. It is shown that amendments by the Legislature were twice offered and defeated to change the words "any means necessary" to "any reasonable means necessary." It was clearly the intention of the Legislature to eliminate the word "reasonable" from the common law rule and it would be an act of legislation for this court under such circumstances to place it back in the act by judicial pronouncement. On the other hand, we do not subscribe to defendant's view that the words "by any means necessary" were an opening of the door for the use of extreme and brutal force by an aggressor in every case to protect against minor infringements of personal and property rights. Necessary force does not mean unnecessary force. Nor does "any means necessary" mean "any reasonable means necessary" under the legislative history here shown.

Killing in self-defense is grounded upon necessity. The right exists only in extremity where no other practicable means to avoid the threatened harm is apparent to the person resorting to it. If there is no real or apparent necessity for the killing, the defense fails. In order to be entitled to assert self-defense as an excuse or justification for the killing, the defendant must have been in imminent danger of death or great bodily harm at the time of the commission of the act. In order to justify or excuse a killing in self-defense, the accused must not only have entertained the belief that his life was

in danger or that he was in danger of suffering great bodily harm, but the belief must have been reasonable and in good faith. 40 Am. Jur. 2d, Homicide, §§ 151 to 159, pp. 439 to 447. Ordinarily a woman is justified in taking human life in protecting her chastity where she has been placed in fear for her life or great bodily harm. Here the defendant was admittedly engaged in prostitution and had negotiated with the deceased to engage in an act of prostitution with him for the sum of $20. It was for the jury to determine whether or not she killed in fear of death or of suffering great bodily harm, or on the other hand, whether or not the killing was motivated by anger, punishment, or vengeance. The character of the defendant and the fact of her engaging in prostitution did not deprive her of the right of self-defense, but they were circumstances to be considered by the jury, along with all other facts and circumstances shown by the evidence in determining the necessity for and the extent of the force used. The jury and not this court was charged with the duty of deciding these issues of fact.

Common law crimes are unknown to the law of this state. The definition of crimes and the punishment to be assessed for their violation are fixed by statute. If section 29-114, R. S. Supp., 1969, means, as the defendant contends, that any person who finds it necessary in his own judgment to protect his person or property from another, no matter how great or trivial the invasion of his rights may be, to use force to the fullest extent, even beyond all reason, the punishment of the aggressor is placed with the person claiming self-defense and not with the state. Without fixing the amount of force that may properly be exercised in resorting to justifiable self-defense, over and above which is criminal, the Legislature has delegated the fixing of the punishment to the person asserting self-defense which it cannot do. The criminal laws under which we live in our social order are prescribed by the state through the Legislature and the

penalties for their violation are likewise prescribed by legislative enactment. Any attempt to delegate either of such powers to private persons with the excesses that naturally follow when crime or punishment are placed elsewhere than with the state, is violative of the powers placed exclusively with the Legislature by our state Constitution.

The argument has been advanced that section 29-114, R. S. Supp., 1969, when properly interpreted, has not changed the preexisting rule which has long been upheld in this state and elsewhere. We cannot accept the basis of this argument for two reasons, first, because unless the amendment here put in issue was intended to change the existing law there would have been no reason for enacting section 29-114, R. S. Supp., 1969, and second, amendments were twice offered and rejected in the Legislature to properly limit the defense of self-defense. The intent of the Legislature, which we are required to determine and follow, is clear and not constitutionally acceptable.

We cannot in effect rewrite the statute to meet constitutional requirements. On the other hand, the constitutionality of the act is not raised which ordinarily precludes us from a consideration of that question. But where the invalidity of the act is plain, and such a determination is necessary to a reasonable and sensible disposition of the issues presented, we are required by necessity to notice the plain error in the premise on which the case was tried. Consequently we hold that section 29-114, R. S. Supp., 1969, is unconstitutional and void.

Instruction No. 9 contains no error prejudicial to the rights of the defendant, in fact, the instruction was more favorable to the defendant than she was entitled to. Defendant's requested instruction herein discussed was in effect given by inclusion in instruction No. 9 and it was properly denied by the trial court. The evidence is sufficient to sustain the verdict of the jury and the

judgment of the trial court ought to be and is affirmed.

AFFIRMED.

SPENCER and BOSLAUGH, JJ., dissenting.

The majority opinion herein violates a fundamental principle of constitutional construction. Neither the State nor the defendant raise an issue as to the constitutionality of the Self-Defense Act, section 29-114, R. S. Supp., 1969. Yet the majority opinion declares the statute invalid without the benefit of briefs or arguments upon the issue of constitutionality.

The following from Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844, indicates the extent of this abrupt departure from well-defined precedent: "All acts of the Legislature are presumed to be constitutional. The courts will not declare an act of the Legislature unconstitutional except as a last resort on the facts before the court. Courts will not decide questions of constitutionality unless they have been raised by a litigant whose interests are adversely affected. A court has no power to summarily pass upon the constitutionality of an act of the Legislature."

It is unnecessary to reach any question of the constitutionality of section 29-114, R. S. Supp., 1969, in this case. The instruction relating to self-defense, which was given in this case, advised the jury that self-defense was "the use of such force *by any means necessary* to repel an attack as at the time appeared to defendant to be necessary." (Emphasis supplied.) The instruction conformed to the statute in that the only limitation placed upon the force that might be used was that it be "necessary."

The instruction as given also conformed to the instruction requested by the defendant except that the trial court included a paragraph, taken from NJI 14.33, stating that a person who uses more force than that permitted by the definition contained in the instruction is criminally responsible therefor. The defendant contends that this part of the instruction was erroneous.

The Self-Defense Act does not authorize the use of unlimited force nor does it provide that persons who use more force than necessary should be immune from prosecution. The defendant's criticism of the instruction given is without merit.