JOHN RITUMS, APPELLANT, V. SAM HOWELL, DOUGLAS COUNTY TREASURER, AND EX OFFICIO TREASURER OF THE TRANSIT AUTHORITY OF THE CITY OF OMAHA, ET AL., APPELLEES.

209 N. W. 2d 160

Filed July 13, 1973. No. 38899.

Howard A. Kaiman and James E. McShane, for appellant.

Herbert M. Fitle, Frederick A. Brown, Edward M. Stein, James E. Fellows, Allen L. Morrow, George S. Selders, Jr., Kent N. Whinnery, Verne W. Vance, Thomas F. Dowd, Richard A. Cerveny, Roger G. Stanway, Robert J. Hamer, and John E. Finnigan, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is an injunction action in which the plaintiff, as a representative of the property taxpayers of the City of Omaha, Nebraska, seeks to prevent the defendant, as treasurer of Douglas County, from collecting a tax to support the operation of Omaha's municipal transit system. It is the plaintiff's contention that the state statute authorizing the creation of a transit authority to

operate the public transportation facilities in Omaha is unconstitutional. The District Court refused to grant the injunction and upheld the statute. We affirm the judgment of the District Court.

Only a brief review of the facts, for background purposes, is necessary. In the early part of 1971, the Omaha Transit Company, a private enterprise then engaged in operating the city's bus system, announced that it would cease such operations as of July 1, 1972, because of financial difficulties. The city council held a series of emergency meetings to formulate plans for continuing mass transit service in Omaha and three bills were drafted for introduction into the state Legislature, each providing for some form of governmental takeover of the transit system. Two of the bills were ultimately enacted into law, and one of those was L.B. 1275, the provisions of which are in dispute here. It became effective on March 21, 1972.

Basically, L.B. 1275 provides that any city of the metropolitan class, of which Omaha is one, may create a transit authority to oversee operation of a publicly owned mass transportation system. The bill outlines the procedure by which the authority's personnel are to be selected, authorizes a tax levy of not more than 1 mill to fund the system, and delineates in a general way the powers and duties of the authority so created. It is the extent of this grant of powers which is in dispute here.

In part, L.B. 1275 amends section 14-1803, R. R. S. 1943, to provide that a city's transit authority, created pursuant to the bill, "* * * shall have full and exclusive jurisdiction and control over all facilities owned or acquired by such city for a public transportation system," that it "shall have and retain full and exclusive jurisdiction and control over all public passenger transportation systems in such city, excluding taxicabs and railroad systems, with the right and duty to charge and collect revenue * * *." And, by amendment to section

14-1805, R. R. S. 1943, that it shall have the power "(t)o determine routes and to change the same * * *" and "(t)o fix rates, fares, and charges for transportation." Finally, under section 14-1822, R. R. S. 1943, as amended, the board is given the power to "make all rules and regulations, according to its discretion, governing the operation of the transportation system, and shall determine all routings and change the same whenever deemed advisable * * *."

Pursuant to these provisions, the Omaha city council passed, on May 9, 1972, an ordinance creating the Transit Authority of the City of Omaha. The ordinance became effective on May 24, 1972. A mill levy of .8 of one mill was passed to fund the project. By July 1, 1972, the Authority had taken over all the operations formerly conducted by the Omaha Transit Company, having secured the temporary approval of the State Railway Commission for doing so. Permanent approval of the transfer was granted by the Commission on September 25, 1972. Prior to that time a request for a decrease in rates had been approved by the Commission. In short, the evidence shows that, throughout its brief existence, the Transit Authority has consistently operated under the aegis of the Public Service Commission.

But it is the plaintiff's contention that despite these voluntary submissions of appropriate questions to the Commission, the Transit Authority is operating under an illegal and usurpatious grant of power. It is urged that the giving by L.B. 1275 of "full and exclusive authority" over local transit facilities to a local Authority contravenes Article IV, section 20, of the Nebraska Constitution, which grants plenary power in such matters to the Public Service Commission. Since the statute is unconstitutional, argues the plaintiff, the treasurer of Douglas County should be enjoined from collecting the property tax which supports it.

But the power of a court to scrutinize and strike down acts of the Legislature may not be invoked with such

facility. It is fundamental that parties seeking a judgment as to the constitutionality of a statute must present a justiciable controversy, and there must thus be a bona fide clash of adverse interests. This court said in Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844 (1963): "Courts will not decide questions of constitutionality unless they have been raised by a litigant whose interests are adversely affected. A court has no power to summarily pass upon the constitutionality of an act of the Legislature. It has power only to decide justiciable disputes. Its power to declare an act of the Legislature unconstitutional arises only when it affects a right of a litigant in such a case."

The nexus which a suitor must demonstrate between the operation of a statute and his interests must be direct; that is, he must show an interest in the statute greater than that accruing to every other taxpayer with a desire for good government, however commendable that desire may be. The plaintiff " 'may attack the constitutionality of a statute only when and so far as it is being or is about to be applied to his disadvantage; and to raise the question *he must show that the alleged unconstitutional feature of the statute injures him* and so operates to deprive him of a constitutional right, * * * one may not urge the unconstitutionality of a statute who is not harmfully affected by the *particular feature* of the statute alleged to be in conflict with the constitution.' " (Emphasis supplied.) State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N. W. 2d 683. See, also, Metropolitan Utilities Dist. v. Merritt Beach Co., 179 Neb. 783, 140 N. W. 2d 626; Flast v. Cohen, 392 U. S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947.

The portion of L.B. 1275 which the plaintiff alleges to be unconstitutional deals with the allocation of powers between the Public Service Commission and the Transit Authority of Omaha. The plaintiff has in no way demonstrated that this feature of the bill operates to his disadvantage. While it is true that he is being compelled

to pay a property tax to support the Transit Authority in general, neither the collection of that tax nor the expenditure of revenue so collected violates a constitutional right of the *plaintiff*. And it is elemental that the plaintiff must show in himself the right which is allegedly infringed by the operation of the statute. State ex rel. Nelson v. Butler, *supra*.

If there is an infringement of constitutional rights here, it must involve those held by the Public Service Commission, whose powers and functions are allegedly usurped. That plaintiff pays a tax to support the Transit Authority does not give him the power to vindicate any rights which the Public Service Commission may have, nor to redress any supposed wrongs committed against it by the Legislature. If the Transit Authority sought to govern common carriers in the City of Omaha without the approval of the Commission, then it is for the Commission to act, and not a taxpayer.

Although we reach the decision in this case on the issue of standing, there is no merit to the plaintiff's contention. The plaintiff primarily relies on State ex rel. State Railway Commission v. Ramsey, 151 Neb. 333, 37 N. W. 2d 502, where it was held that a statute giving general control over all carriers by air to the Department of Aeronautics (including regulation of rates and services) was not constitutional. The Ramsey case is clearly distinguishable from the present one in that the Legislature attempted by explicit language to absolutely exclude the jurisdiction of the State Railway Commission over the common carriers by air. The statute states, "commission shall * * * exercise *no* control over aeronautics." In the present case the Transit Authority statute under attack contains no provision prohibiting the Public Service Commission from regulating the publicly owned and operated transit system. The plaintiff misconceives the rhetoric of the present act. It is clear that the use of the term "exclusive control" refers only to local municipal government and there is no at-

tempt to delegate the Commission's "general control" or rate-making jurisdiction to the Authority. While not only is this true as a matter of construction but it is not disputed that the Transit Authority had administratively construed the law to require it to submit rate- and route-making powers to the Public Service Commission. It is clear on the merits that the powers enumerated in sections 14-1805 and 14-1822 of the Transit Authority law are enabling powers limited by the general law of the state. In the absence of specific legislation, the power to determine rates, fares, and routing is only as extensive as the power of any private transportation system to do the same. Metropolitan Utilities Dist. v. City of Omaha, 171 Neb. 609, 107 N. W. 2d 397; United Community Services v. Omaha National Bank, 162 Neb. 786, 77 N. W. 2d 576.

Moreover, it is clearly the duty of the court to give a statute an interpretation which meets constitutional requirements if it can be reasonably done, and if a statute is subject to more than one construction, the court is required to adopt the construction which would make the act constitutional. Terry Carpenter, Inc. v. Wood, 177 Neb. 515, 129 N. W. 2d 475; Mann v. Wayne County Board of Equalization, 186 Neb. 752, 186 N. W. 2d 729; Kaup v. Sweet, 187 Neb. 226, 188 N. W. 2d 891; United States v. Vuitch, 402 U. S. 62, 91 S. Ct. 1294, 28 L. Ed. 2d 601. There is no merit to this contention of the plaintiff.

There being no justiciable controversy here, the judgment of the District Court is affirmed.

AFFIRMED.

SPENCER, BOSLAUGH, NEWTON, and CLINTON, JJ., concur in the result.