CITY OF RALSTON, NEBRASKA, ET AL., APPELLEES, V. BERRI BALKA, TAX COMMISSIONER OF THE STATE OF NEBRASKA, ET AL., APPELLANTS, AND NEBRASKA HORSEMEN'S BENEVOLENT AND PROTECTED ASSOCIATION ET AL., INTERVENORS–APPELLEES.

530 N.W.2d 594

Filed April 7, 1995.   No. S–93–882.

Don Stenberg, Attorney General, and L. Jay Bartel for appellants.

Donald L. Dunn, of Rembolt Ludtke Parker & Berger, for appellees and intervenors–appellees.

Michael A. Kelley and Michael J. Lehan, of Kelley & Lehan, P.C., for Nebraska Horsemen's Benevolent and Protected Association.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ., and GRANT, J., Retired, and HOWARD, D.J., Retired.

PER CURIAM.

The Nebraska Tax Commissioner, M. Berri Balka, appeals from an order of the Lancaster County District Court which held that 1991 Neb. Laws, L.B. 795, § 6, a lottery regulation provision, is unconstitutional. The district court enjoined the commissioner from enforcing L.B. 795, § 6. We affirm.

In 1991, the Nebraska Legislature enacted L.B. 795, which provided:

> (1) If a racetrack licensed pursuant to Chapter 2, article 12, is located in a county and such county or a city or

village within such county conducts a lottery pursuant to the Nebraska County and City Lottery Act, *two percent of the gross proceeds from such lottery shall be credited to the Thoroughbred Racing Assistance Fund.*

(2) The Thoroughbred Racing Assistance Fund is hereby created. The fund shall be used to supplement purses for live thoroughbred racing in Nebraska. Twenty-five percent of the fund shall be distributed as purse supplements and breeder and stallion awards for Nebraska-bred horses as defined and registered pursuant to section 2-1213 at the racetrack where the funds were generated. The State Racing Commission shall distribute money in the fund to the licensed racetracks based proportionately on the percentage of the live race handle of the immediately preceding year. Any money in the fund available for investment shall be invested by the state investment officer pursuant to sections 72-1237 to 72-1276.

(Emphasis supplied.) 1991 Neb. Laws, L.B. 795, § 6 (codified at Neb. Rev. Stat. § 9-629.02 (Reissue 1991)).

Several municipal corporations and individuals filed this action for declaratory and injunctive relief. The municipal corporations are cities and villages located in counties with licensed horse racetracks and with licensed lotteries; the individuals are taxpayers and property owners residing in two of those counties. They sought a declaration that the "two percent of the gross proceeds" provision should be construed as consisting of the 2-percent tax required to be submitted to the Department of Revenue by counties, cities, and villages conducting lotteries, which is credited to the Charitable Gaming Operations Fund under Neb. Rev. Stat. § 9-648 (Reissue 1991). Additionally, they sought a declaration that L.B. 795, § 6, was unconstitutional on equal protection grounds and requested injunctive relief, thereby preventing the commissioner from implementing L.B. 795, § 6.

The district court found that L.B. 795, § 6, "impose[d] an additional tax in addition to the tax imposed by § 9-648" and therefore violated Neb. Const. art. III, § 18. The district court also held that L.B. 795, § 6, violated U.S. Const. amend. XIV,

§ 1, and Neb. Const. art. I, §§ 1 and 25, abridging the municipal corporations' and individual taxpayers' equal protection rights. The district court therefore enjoined the commissioner from implementing L.B. 795, § 6. The commissioner appealed.

The threshold issue in this appeal is whether the municipal corporations and individual taxpayers have standing to bring this action. Before a party is entitled to invoke a court's jurisdiction, that party must have standing to sue, which involves having some real interest in the cause of action; in other words, to have standing to sue, a plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy. *State v. $15,518*, 239 Neb. 100, 474 N.W.2d 659 (1991); *Behrens v. American Stores Packing Co.*, 236 Neb. 279, 460 N.W.2d 671 (1990). The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Nebraska Depository Inst. Guar. Corp. v. Stastny*, 243 Neb. 36, 497 N.W.2d 657 (1993).

Neither the special legislation prohibition nor the Equal Protection Clauses have any applicability to acts of a state against its own political subdivisions. See *Triplett v. Tiemann*, 302 F. Supp. 1239 (D. Neb. 1969). Consequently, the municipal corporations lack standing to challenge the constitutionality of L.B. 795, § 6. However, we have long held that a taxpayer may commence and prosecute an equitable action to enforce a right of action that the governing body has refused to enforce. *Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 498 N.W.2d 325 (1993); *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985). The taxpayers therefore have standing to challenge the constitutionality of L.B. 795, § 6, because they are seeking to enjoin the expenditure of public funds. See *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 327 N.W.2d 595 (1982).

The party claiming that a statute is unconstitutional bears the burden of so proving, and all reasonable doubts will be resolved in favor of the statute's constitutionality. *Henry v. Rockey*, 246 Neb. 398, 518 N.W.2d 658 (1994); *Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 512 N.W.2d

642 (1994), *cert. denied* ____ U.S. ____, 115 S. Ct. 201, 130 L. Ed. 2d 131; *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991); *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990).

We note that the appellee cities raised in their petition the proposition that L.B. 795 violates article III, § 24, of the Nebraska Constitution. However, the trial court did not pass on the proposition, and appellees did not see fit to raise the issue on cross-appeal. Article III, § 24, prohibits all games of chance and lotteries except as otherwise provided by law. Subsection 2 of article III, § 24, provides exceptions to this general gambling ban. Subsection 2 provides, in relevant part, that "[t]he Legislature may authorize and regulate a state lottery . . . and other lotteries, raffles, and gift enterprises . . . the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises."

We have declared that ordinarily or generally, this court will not consider constitutional challenges absent a specification of the provisions claimed to be violated. *State v. Melcher*, 240 Neb. 592, 483 N.W.2d 540 (1992); *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987); *State v. Meints*, 223 Neb. 199, 388 N.W.2d 813 (1986). Indeed, we have on occasion overstated the rule by omitting the observation that such is only ordinarily or generally the case. E.g. *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986).

However, we have long recognized that at times the legal realities are such that a constitutional provision must be considered as plain error notwithstanding that the parties have failed to identify it. *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991), *cert. denied* ____ U.S. ____, 113 S. Ct. 2930, 124 L. Ed. 2d 681 (1993); *Linn v. Linn*, 205 Neb. 218, 286 N.W.2d 765 (1980); *State v. Goodseal*, 186 Neb. 359, 183 N.W.2d 258 (1971), *cert. denied* 404 U.S. 845, 92 S. Ct. 146, 30 L. Ed. 2d 82; *State v. Majors*, 85 Neb. 375, 123 N.W. 429 (1909).

In *MAPCO Ammonia Pipeline, supra*, we declared unconstitutional a statute granting certain tax exemptions, notwithstanding that the taxpayers had failed to bring the legality of the exemptions into question. In doing so, we

observed that although the parties ordinarily must raise constitutional issues before they will be considered on appeal, " 'where the invalidity of the act is plain, and such a determination is necessary to a reasonable and sensible disposition of the issues presented, we are required by necessity to notice the plain error in the premise on which the case was tried.' " 238 Neb. at 584, 471 N.W.2d at 746 (quoting *Goodseal, supra*). Although neither party had questioned the constitutionality of the then self-defense statute, this court in *Goodseal* held it to be unconstitutional. In *Linn, supra*, we observed that although the issue had not been properly raised in the trial court, we would nonetheless, because of the importance and uniqueness of the facts, note as plain error the unconstitutional vagueness of a statute dealing with the termination of parental rights. In *Majors, supra*, this court held that a statute was not only infirm under the constitutional provision cited by the litigant, but that it also violated another provision of the Constitution. The *Majors* court explained it did so, even though the additional ground had been presented neither on argument nor in the brief, because the action had been brought on behalf of the State by the Attorney General

> to test and determine the question of the validity of the statute in order to further the educational interests of the state, and, if for any reason we are convinced that the statute is unconstitutional, we ought to so determine; for, if the courts can, under such pretext, nullify the constitution, we will soon find ourselves openly defying the provisions of the fundamental law which we have solemnly sworn to uphold.

85 Neb. at 387, 123 N.W. at 434.

We are here presented with an action in which public entities question the constitutionality of the manner in which monies generated to benefit their communities are being distributed in the face of constitutional language which, although not cited by them, directly controls the answer. To ignore that language would result in an unreasonable and nonsensical disposition of the issue which would, in effect, nullify the Constitution. The law cannot and will not permit that to happen. Thus, we move on to an analysis of L.B. 795, § 6, in light of the language of

article III, § 24(2).

L.B. 795, § 6, is clearly a lottery regulation provision, subject to article III, § 24. It requires certain lotteries to credit portions of their gross proceeds to a state–created fund, which was created "to supplement purses for live thoroughbred racing in Nebraska." 1991 Neb. Laws, L.B. 795, § 6. Such a provision must comply with the general gambling ban's exceptions found in article III, § 24. The gravamen is whether requiring 2 percent of the gross proceeds from certain lotteries to be credited to the horseracing industry is for "charitable or community betterment purposes."

"Charitable" means "[h]aving the character or purpose of a charity." Black's Law Dictionary 233 (6th ed. 1990). It includes "every gift for a general public use, to be applied consistent with existing laws, for benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint." *Id.* Clearly, supplementing the purses for live thoroughbred racing in Nebraska is not a charitable activity. Therefore, to withstand constitutional scrutiny, diverting 2 percent of the gross proceeds from certain lotteries to the fund must qualify as a "community betterment" purpose.

Although we were unable to find any definition of "community betterment," we were able to find a definition of "betterment." A "betterment" is an improvement. Webster's Third New International Dictionary, Unabridged 209 (1981). It is "an improvement . . . that does more than restore to a former good condition." *Id.*

In the case at bar, supplementing the purses for live thoroughbred racing in Nebraska clearly does not confer any direct and peculiar benefit to the entire community. To the contrary, only the owners of Nebraska–bred horses stand to benefit from the implementation of L.B. 795, § 6, and any argument that such a lottery regulation will eventually trickle down to the general populace and better the community at large is at best tenuous. Such a "betterment" clearly is not shared by the entire community. As a result, L.B. 795, § 6, does not qualify for the "community betterment" exception to article III, § 24.

We now turn to the commissioner's first assignment of error, in which the commissioner contends that the district court erred in concluding that L.B. 795, § 6, constituted special legislation prohibited by Neb. Const. art. III, § 18. That section provides in relevant part:

> The Legislature shall not pass local or special laws in any of the following cases, that is to say:
>
> . . . .
>
> Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . . In all other cases where a general law can be made applicable, no special law shall be enacted.

A legislative act constitutes special legislation, violative of article III, § 18, if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class. *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991); *City of Scottsbluff v. Tiemann*, 185 Neb. 256, 175 N.W.2d 74 (1970). The district court determined that L.B. 795, § 6, "creat[ed] an unreasonable, arbitrary, discriminatory, and closed classification," violative of article III, § 18.

To determine whether a legislative classification constitutes an unreasonable classification and therefore violates article III, § 18, we must determine whether the classification at issue is " ' "based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to objects to be classified. . . ." ' " *Haman*, 237 Neb. at 711, 467 N.W.2d at 846 (quoting *State ex rel. Douglas v. Marsh*, 207 Neb. 598, 300 N.W.2d 181 (1980)). In other words, the legislative classification must (1) be based on some *substantial* difference of circumstances or situation that would indicate the justice or expediency of diverse legislation with regard to the objects classified and (2) further a public purpose. *Haman, supra*; *Douglas, supra*.

The Legislature has properly drawn a classification " ' "if the special class has some reasonable distinction from other subjects of like general character . . ." ' " and that distinction is reasonably related to the legitimate goals sought to be achieved. *Haman*, 237 Neb. at 711, 467 N.W.2d at 846 (quoting

*Douglas, supra*). This "test of validity under the special legislation prohibition is more stringent than the traditional rational basis test." *Haman*, 237 Neb. at 713, 467 N.W.2d at 847. In the case at bar, the Legislature is seeking to supplement purses for live thoroughbred racing in Nebraska. In other words, the Legislature enacted L.B. 795 essentially to subsidize participants in the horseracing industry.

The individual taxpayers had the burden of proving in the district court that L.B. 795, § 6, violated article III, § 18. The individual taxpayers, however, failed to offer any evidence to indicate that no substantial difference of circumstances or situation existed. Absent any proof to the contrary, we are unable to conclude that the individual taxpayers satisfied their burden of proving that L.B. 795, § 6, constituted an unreasonable classification.

The commissioner also contends that the district court improperly found that L.B. 795, § 6, created a permanently closed class. A "closed class" is one that " 'limits the application of the law to present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development . . . .' " *City of Scottsbluff*, 185 Neb. at 262, 175 N.W.2d at 79 (quoting *State v. Kelso*, 92 Neb. 628, 139 N.W. 226 (1912)). "In deciding whether a statute legitimately classifies, the court must consider the actual probability that others will come under the act's operation. If the prospect is merely theoretical, and not probable, the act is special legislation." *Haman*, 237 Neb. at 717–18, 467 N.W.2d at 849. See, also, Neb. Rev. Stat. §§ 2–1201 to 2–1242 (Reissue 1991 & Cum. Supp. 1992). Indeed, in § 2–1204, the Legislature stated:

> The State Board of Agriculture, or any county society for the improvement of agriculture organized under section 2–201 or 2–221, or any corporation or association of persons organized and carried on for civic purposes, or which conducts a livestock exposition for the promotion of the livestock or horse–breeding industries of the state, and which does not permit its members to derive personal profit from its activities by way of dividends or otherwise, may apply to the State Racing Commission for a license to

conduct horseracing at a designated place within the state. This statutory provision indicates that the Legislature recognizes that the class is not permanently closed, as it anticipated future applications for horseracing licenses.

In Nebraska today, Dakota, Hall, Douglas, Lancaster, and Platte Counties all have thoroughbred racing conducted on a horseracing track, licensed pursuant to Neb. Rev. Stat. chapter 2, article 12, within their boundaries. In addition, during 1992's last quarter, 72 counties, cities, and villages operated lotteries pursuant to the act and were not required to submit any portion of their gross proceeds to the fund. Furthermore, during that same period, 15 counties, cities, and villages operated lotteries pursuant to the act and would have been required to submit 2 percent of their gross proceeds to the fund (if we follow the commissioner's interpretation of the act). Nothing is prohibiting any county, city, or village currently without either a horseracing track, a lottery, or both from operating one. Therefore, we are simply unable to conclude that L.B. 795, § 6, creates a permanently closed class.

The commissioner's second assignment of error is that the district court erred in holding that L.B. 795, § 6, violates the Equal Protection Clauses of the U.S. Constitution, U.S. Const. amend. XIV, § 1, and the Nebraska Constitution, Neb. Const. art. I, §§ 1 and 25. The district court held that the act violated the Equal Protection Clauses "[b]y expending or crediting tax revenue for the benefit of a special, closed class, i.e., licensed horse racing tracks and owners of horses racing within the State." (Emphasis omitted.) The municipal corporations concede that they are not afforded protection under the Equal Protection Clauses, which they are not, because that provision has no application to acts of a state against its own political subdivisions. See *Triplett v. Tiemann*, 302 F. Supp. 1239 (D. Neb. 1969). The individual taxpayers contend, however, that they are afforded protection under the Equal Protection Clauses.

To challenge a statute's constitutionality under the Equal Protection Clauses, an individual's right must be affected. *Ritums v. Howell*, 190 Neb. 503, 209 N.W.2d 160 (1973). That individual must demonstrate a direct nexus between the statute's operation and the individual's interest; in other words, an

individual must establish "an interest . . . greater than that accruing to every other taxpayer with a desire for good government, however commendable that desire may be." *Id.* at 506, 209 N.W.2d at 163. An individual taxpayer " ' "must show *that the alleged unconstitutional feature of the statute injures him and so operates to deprive him of a constitutional right . . . .*" ' " *Id.* (quoting *State ex rel. Nelson v. Butler*, 145 Neb. 638, 17 N.W.2d 683 (1945)). However, an exception to this general rule exists when an individual taxpayer seeks to enjoin an illegal act by a municipal body. *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985); *Martin v. City of Lincoln*, 155 Neb. 845, 53 N.W.2d 923 (1952).

As we have demonstrated, L.B. 795, § 6, is an "illegal act" because it violates article III, § 24. The individual taxpayers therefore have standing to challenge the constitutionality of L.B. 795, § 6, on equal protection grounds. However, in light of our holding that L.B. 795, § 6, violates article III, § 24, it is unnecessary for us to engage in an analysis of the individual taxpayer's claim that L.B. 795, § 6, violates the Equal Protection Clauses of the U.S. and Nebraska Constitutions.

In holding that L.B. 795, § 6, is unconstitutional because it violates Neb. Const. art. III, § 24, we affirm the district court's decision. The commissioner is permanently enjoined from enforcing L.B. 795, § 6.

AFFIRMED.

WRIGHT, J., concurring in part, and in part dissenting.

I concur with the majority in its holding that 1991 Neb. Laws, L.B. 795, § 6, is not special legislation and, consequently, does not violate article III, § 18, of the Nebraska Constitution. I also concur in the majority's holding that the Equal Protection Clauses of the Nebraska and U.S. Constitutions are not applicable to acts of a state against its own political subdivisions.

I respectfully dissent from the majority's opinion that L.B. 795, § 6, is unconstitutional. The question of whether L.B. 795, § 6, violates article III, § 24, of the Nebraska Constitution is not before this court. The parties did not raise this argument, and the district court did not rule on it. Consequently, I express no opinion on the subject.