REQUESTED BY: Roger R. Wehrbein, Senator, Nebraska Legislature
You have posed two questions relating to LB 59, legislation that would recognize the middle of the Missouri River channel as the compromise boundary between the states of Missouri and Nebraska. You note that an amendment (AM 1604) to LB 59 has been introduced which proposes to establish a state fund for the replacement of lost tax revenues sustained by any Nebraska political subdivision as the result of lands ceded to another state.
First, you question whether AM 1604 would be considered "closed class" legislation, causing LB 59 to be declared unconstitutional if enacted. Second, you ask whether AM 1604, or any other possible amendment, would invalidate the proposed boundary compact between Missouri and Nebraska, if enacted, since Nebraska's legislation would not remain identical to that already passed by Missouri's General Assembly.
As to the first inquiry, it is our opinion that the proposed amendment does not constitute "special legislation" in violation of Article III, § 18 of our State's Constitution. A legislative act constitutes special legislation if it creates an arbitrary and unreasonable method of classification, or if it establishes a permanently "closed class." Haman v. Marsh,237 Neb. 699, 467 N.W.2d 836 (1991). A closed class is one that limits the application of the law to present conditions, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development. City of Ralston v.Balka, 247 Neb. 773, 530 N.W.2d 594 (1995).
In determining whether a class is closed, courts are not limited to reviewing the language used by the legislature, but may also consider an act's practical application. So, if the prospect that others will be added to a class is merely theoretical, and not probable, the act nevertheless constitutes special legislation. "The conditions for entry to the class must not only be possible, but reasonably probable of attainment."Haman, 237 Neb. at 718, 467 N.W.2d at 849. In Haman v. Marsh, the Nebraska Supreme Court determined that the class of depositors benefitted by the challenged legislation was closed despite open-ended language of the act. As noted by the court, "[t]he realities of the situation are that except for a highly improbable set of events the class is permanently closed to future members." Id. See also, Scottsbluff v. Tiemann,185 Neb. 256, 262, 175 N.W.2d 74 (1970) (legislation directing certain cities to establish municipal courts found unconstitutional because the act's reference to particular census assured that, in practical operation, class was limited to two cities).
On its face, AM 1604 is not restricted solely to those political subdivisions impacted by the proposed boundary compact between the states of Missouri and Nebraska. Nor, by its practical application, is AM 1604 permanently closed to a set number of political subdivisions. Rather, the amendment leaves open the possibility that other political subdivisions may be included in the class as the result of future state agreements or compacts that entail the ceding of land within the State's borders. Thus, we conclude that the class of political subdivisions identified by AM 1604 is not of a closed nature.See e.g., Hunzinger v. State, 39 Neb. 653, 58 N.W. 194 (1894) (an act will not be declared special legislation, solely because at time of enactment there was only one county to which provisions were applicable); State v. Stuht, 52 Neb. 209, 71 N.W. 941
(1897) (a law, general in character, although affecting but one city, is constitutional); Omaha Parking Authority v. City ofOmaha, 163 Neb. 97, 77 N.W.2d 862 (1956) (legislature may properly enact laws applicable to all cities of a given class even though there is only one city presently within the class).
With respect to the second issue raised, it is our view that amending LB 59 to include provisions not found in Missouri's counterpart legislation will not undermine the ability of the states to reach a valid compact, so long as any such amendment places no burdens on the compact, and is not made part of the compact agreement itself. In Northeast Bancorp, Inc. v. Board ofGov'rs of the Federal Reserve System, 472 U.S. 174,105 S.Ct. 2545, 2254 (1985), the United States Supreme Court outlined some of the indicia of compacts. These include conditional consent by member states in which each state is not free to modify or repeal its participation unilaterally; and state enactments which require reciprocal action for their effectiveness. See also, In People, Ect. v. City of South LakeTahoe, 466 F. Supp. 527, n. 29 (E.D. Cal. 1978)("[i]n order to secure congressional approval of a bi-state compact as required by the Constitution, the legislation enacted by the states must be identical in every respect"); Seattle Master Builders v.Pacific N.W. Elec. Power, 786 F.2d 1359, 1363 (9th Cir. 1986).
The "reciprocal legislation" noted in the foregoing cases, however, is a reference to the compact agreement itself, not recitals or administrative sections contained within the enabling legislation that may necessarily differ between compacting states' respective legislative proposals. See e.g. Bush v. Muncy,659 F.2d 402, 412, n. 8 (4th Cir. 1981) (noting that "local adaptations" contained within states' respective compact proposals "are perfectly compatible with a mutual intention of party states that the substantive provisions of the compact shall be identical in substance and hence subject to uniform application among all the parties.") In short, so long as non-reciprocal terms are not contained in the text of the agreement itself, and do not alter the intended operation of the states' compact, such variants will not undermine the validity of an interstate compact. As noted by the court in C.T. Hellmuth v. Washington Metro. Area Trans.,414 F. Supp. 408 (D. Maryland 1976):
 It is within the competency of a State which is a party to a compact with another State, to legislate in respect of matters covered by the compact so long as such legislative action is in approbation and not in reprobation of the compact.
Kansas City Area Transp. Auth. v. State of Mo., 640 F.2d 173, 174
(8th Cir. 1981), quoting Henderson v. Delaware River Joint TollBridge Comm'n, 362 Pa. 475, 66 A.2d 843, 849 (1949).
Thus, because the provisions contained in AM 1604 would not impose burdens upon the operation of the proposed compact, there is nothing to preclude its adoption. As a cautionary measure, however, we would recommend that AM 1604 be modified to clarify that its terms are not in reprobation of the compact, nor made a part of the compact agreement itself. The inclusion of a severability clause would also avoid any possibility that the proposed compact might be nullified as the result of non-reciprocal amendments to LB 59.
Sincerely,
 DON STENBERG Attorney General
 Marie C. Pawol Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General